**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos GARCIA and Jose Luis Garcia, Defendants–Appellants.**

**Nos. 89–2138, 89–2139.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1989.

Decided March 19, 1990.

---

earlier version of that statute that did not contain an exception for home rule municipalities.

Before POSNER and FLAUM, Circuit Judges, and DUMBAULD, Senior District Judge.[*]

FLAUM, Circuit Judge.

Carlos Garcia ("Carlos") and Jose Luis Garcia ("Jose") were convicted of a conspiracy to distribute and possess with intent to distribute in excess of 100 kilograms of marijuana. Carlos appeals the denial of his motion to suppress the evidence on the grounds that the police lacked probable cause to stop or search the truck and also that he did not consent to the search. Jose appeals the admission of co-defendant Carlos' hearsay statements and the refusal by the district court to give his theory of defense instruction. Additionally, Jose appeals his sentencing under base offense level 26 of the Sentencing Guidelines. For the following reasons, we affirm on all counts.

I.

On November 16, 1988, Carlos and Jose were traveling northbound on Interstate 57 through southern Illinois in a 1978 Chevrolet pickup truck bearing Texas license plates. Trooper Baker of the Illinois State Police was parked in his unmarked squad car at the north end of a construction zone on Interstate 57, just north of Marion, Illinois. Baker was "clocking" cars with his radar gun that were headed north through the construction zone, where the posted speed limit was 45 m.p.h. Baker clocked the pickup truck driven by Carlos traveling 50 m.p.h. through the construction zone and proceeded to pull the truck over to the side of the road. Baker approached the driver's door and spoke to Carlos. Jose was a passenger in the truck. Baker requested, in English, a driver's license and vehicle registration. Carlos produced a driver's license but was unable to produce any registration. Jose also produced personal identification upon request by the trooper but also had no registration. In fact, Carlos stated to Baker that he had

Frederick J. Hess, U.S. Atty., East St. Louis, Ill., Laura J. Jones, Asst. U.S. Atty., Benton, Ill., James Porter, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Renee E. Schooley, Federal Public Defender, St. Louis, Mo., Bernard A. Paul, Marion, Ill., Bland D. Puente, Cruz Cervantes, Houston, Tex., for defendants-appellants.

[*] The Honorable Edward Dumbauld, United States Senior District Judge of the Western District of Pennsylvania, sitting by designation.

borrowed the truck from a person named "McClavio" to drive to Indiana to look for work, but could not remember the last name of the person who lent the truck to him or their precise destination in Indiana. During this colloquy between Baker and Carlos, Baker observed Jose fumbling through the glove compartment in an apparent attempt to conceal something. Baker also noticed that Carlos and Jose were extremely apprehensive and nervous while they were questioned. Baker then took Carlos' license back to his squad car to write a warning ticket and to run a routine computer inquiry on Carlos.

The computer in Baker's car indicated that an individual named Carlos Garcia was a wanted escaped felon. After requesting assistance, which is customary after such a computer reply, Baker returned to the truck to verify whether the driver was the wanted felon. Upon returning to the truck, Baker observed none of the identifying tatoos of the wanted felon, as indicated by the computer response, on the driver. Baker proceeded to issue a warning ticket and asked Carlos if there were any "drugs or weapons in the vehicle." Carlos responded "no" and Baker asked, "Do you mind if I take a look?" Carlos assented to this request and Baker directed the same question to Jose. Carlos translated the question to Jose who nodded his head in affirmance. According to Baker's testimony, both men proceeded to get out of the truck and Baker asked them to wait behind the truck with his partner. Baker testified that he sought the defendants' consent to search for contraband based on a number of factors: the arousal of his suspicion by the defendants' extreme nervousness; the inability of Carlos and Jose to identify the truck's owner; Carlos' inability to give a precise destination for the trip; and Jose's furtive movements in the glove compartment.

Baker began his search on the passenger side by opening the glove compartment, where he found a message beeper. Baker continued his search by looking behind and under the truck's seats. While he was searching, additional troopers arrived at the scene. Agent Olivero joined Baker in

his search. During the search, Baker's suspicions were aroused when he noticed the lack of window cranks and door handles on both doors and mismatched and ill-fitting screws that held the interior door panels in place. Determining this to be suspicious, Baker and Olivero inspected the door panels more closely. While looking through the window slot they observed grey packages wedged inside the door. Based on their visual observations, Baker and Olivero removed the driver's side door panel and found ten packages wrapped in duct tape. The packages were approximately two to three inches thick, twelve inches long, and six inches wide. Baker and Olivero opened one package with a knife and discovered marijuana. Carlos and Jose were then placed under arrest and the truck was impounded. During a subsequent search, officers also discovered marijuana concealed behind false sidewalls in the bed of the truck. A total of approximately 100 pounds of marijuana was discovered in the truck.

Carlos and Jose were taken to the Department of Criminal Investigation where they were given their *Miranda* warnings. They were given their rights orally in English and also on a waiver form with the rights written in both English and Spanish. Carlos read and signed the *Miranda* waiver form on both the English and Spanish sides. Jose refused to sign the waiver, but initialed each paragraph indicating he read them. Jose was not questioned but Carlos agreed to discuss the marijuana. Carlos' oral statements were drafted into written form by Agent Key. This written statement was read and signed by Carlos.

After his arrest, Carlos cooperated with the law enforcement agencies by telephoning his Indiana contacts and informing them he had truck difficulties in Illinois. This eventually led to the arrest of his contacts. The following day, on November 17, 1988, a stolen vehicle report was filed by McClavio Pena reporting the 1978 Chevrolet pickup truck as stolen. However, no one attempted to recover the truck after it was seized by the Illinois State Troopers

even after Officer Key contacted a woman at McClavio's house.

Carlos and Jose were charged with conspiracy to distribute and possess with intent to distribute marijuana in excess of 100 kilograms in violation of 21 U.S.C. §§ 841(a)(1), 846. Carlos made a motion to suppress the evidence seized from the truck along with statements he made subsequent to arrest claiming the troopers had neither probable cause nor consent to search the truck. The district court denied this motion finding Carlos gave knowing and intelligent consent, and that under the totality of the circumstances his consent was voluntary. The court also found that the scope of the search did not exceed the consent given. Carlos then pled guilty, but reserved his right to appeal the denial of his motion to suppress.

Jose proceeded to trial. At trial, Carlos asserted his fifth amendment right and refused to testify. Based on his refusal to testify, the trial court found Carlos to be an unavailable witness and allowed the government to introduce his oral and written statements made to the police under the hearsay exception for statements against interest. The jury returned a guilty verdict against Jose. Prior to sentencing, Jose filed objections to the Sentencing Guideline calculations contained in the presentence report, specifically the calculation of the appropriate base offense level as 26. A hearing was held and all of Jose's objections were overruled. Carlos was sentenced to seventy-eight months of incarceration to be followed by four years of probation. Jose was sentenced to eighty months incarceration also to be followed by a four-year probation period. Both defendants appeal.

## II. Carlos Garcia's Claims

### A. Standing

■ In the district court, and on appeal, the government alleged that Carlos lacked standing to contest the legality of the search and seizure. The government asserted that Carlos had neither a legitimate nor a reasonable expectation of privacy in the vehicle he was riding in because the truck was reported stolen. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (to have standing, one must have a legitimate expectation of privacy in the area searched and that expectation must be objectively reasonable)). The trial court agreed with the government and held that Carlos lacked standing to challenge the search, but nevertheless reached the merits of his claims.

After noting that the issue of standing to challenge the search of a stolen vehicle has not been addressed by the Seventh Circuit, the district court reached its conclusion by finding that while defendants may have had a subjective expectation of privacy, it is not an expectation that society is prepared to recognize as reasonable. The court based its decision, in part, on a determination that the defendants could not persuade the court that they were exercising exclusive control over the truck with the owner's permission, in light of the stolen vehicle report and the defendants' inability to remember the owner's last name.

In determining that persons present in stolen cars do not have a reasonable expectation of privacy in those cars, the trial court relied on the Supreme Court's statement in *Rakas v. Illinois*, 439 U.S. 128, 141 n. 9, 99 S.Ct. 421, 429 n. 9, 58 L.Ed.2d 387 (1978), criticizing two decisions that "inexplicably have held that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile." The court also looked to *United States v. Hargrove*, 647 F.2d 411, 413 (4th Cir.1981), where the Fourth Circuit held that a suspect arrested in a stolen motor vehicle did not have standing to object to the search because he lacked a legitimate expectation of privacy in the car he was driving since it was stolen. *See also United States v. Hensel*, 672 F.2d 578 (6th Cir.1982).

The dispositive factor in these cases was that the vehicles were actually stolen. The vehicles had been previously reported stolen, and the defendants attempted to con-

ceal the vehicles' true identity. Also the defendants did not challenge the status of the vehicles as Carlos does here. Here, Carlos claims to have borrowed the vehicle from one "McClavio" who reported it stolen after apparently learning of Carlos' arrest in an attempt to disassociate himself from Carlos. In such a set of circumstances, it remains for the government to prove by the preponderance of the evidence that the vehicle was stolen. If they cannot meet this threshold, we need not reach the issue of standing.

Initially, the government relies on a stolen vehicle report filed the day after Carlos was arrested. The stolen vehicle report, standing alone, is not sufficient to rebut Carlos' assertion. As the trial court recognized, the filing of the stolen vehicle report the day after Carlos' arrest, subsequent to law enforcement attempts to apprehend other drug gang members, throws up a red flag as to the motives behind the filing. It is quite likely that the owner of the vehicle, in filing the report, was trying to disassociate himself from the criminal enterprise. Such a scenario is supported in the record by the testimony of one of the troopers, when he stated it was highly unusual in a case of a stolen vehicle that the owner, upon being informed of its recovery by the police, would not attempt to reclaim his vehicle. In any event, we conclude that the stolen vehicle report is not sufficient to refute the presumption in favor of Carlos that he had permission.

Carlos' assertion that he borrowed the truck is further supported by the truck's design. This truck was equipped with secret compartments in its bed to stash contraband. It would be extremely lucky or the result of very diligent work for Carlos to have stolen a truck so well equipped for his purposes. It is not likely that Carlos stole the vehicle and customized it to his needs. The truck, according to the stolen vehicle report, was missing in Texas as of November 14. Carlos was arrested at approximately 2:00 p.m. November 16 in Illinois. This hardly leaves a sufficient amount of time to modify the truck, conceal the marijuana and drive from Texas to Illinois.

The district court in reaching its decision also found it incredible that Carlos could borrow a truck to drive from Texas to Indiana and not know the last name of the lender. However, this is not inconsistent with Carlos' claim of having the owner's permission. Rather it is quite likely that the planned ignorance of drug couriers by other members of an organized drug gang as to members' last names may be for just such a situation as we have today. By this practice, the kingpins can help protect themselves from future arrest. We do not find this as important a factor as does the trial court.

The burden is on the government to prove by a preponderance that property is not being used with the permission of the owner. Here the evidence presented by the government and relied on by the district court is not strong enough to satisfy the government's burden. Rather, the stolen vehicle report and the inability to recall the last name of the lender leave the issue of permission still in doubt. In such a set of circumstances, we are unable to conclude that it is proved by a preponderance of the evidence that it is more likely the truck was stolen than Carlos had permission to use the truck.

Because the government hasn't proven the vehicle was stolen, we find Carlos satisfies the two-prong standing inquiry established by the Supreme Court in *Smith*, 442 U.S. at 740, 99 S.Ct. at 2580, for fourth amendment cases. First, this test requires Carlos exhibit a subjective expectation of privacy. This prong has been met by our determination that the government failed to prove the vehicle stolen and thus Carlos' assertion of permission to use the truck must prevail. Next, *Smith* requires his subjective expectation be one that society is prepared to recognize as reasonable and legitimate. If an individual has the owner's permission to use property, society surely recognizes this as reasonable. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (an individual in an apartment with the permission of the owner has standing to challenge a search of the apartment); *United States v.*

*Miller,* 821 F.2d 546 (11th Cir.1987) (driver of car that has asserted permission from a friend to use the car has standing to challenge the search of the borrowed car); *United States v. Posey,* 663 F.2d 37, 41 (7th Cir.1981) (defendant had an expectation of privacy in an automobile owned by his wife which he had permission to use at the time of the search). Thus, Carlos' use of the vehicle with the owner's permission provides Carlos with a subjective expectation of privacy that is reasonable and legitimate. Therefore Carlos has standing to assert his fourth amendment rights. We turn to the issue of whether the search was proper.

### B. Search of the Truck

Initially, Carlos asserts that the troopers did not have reasonable suspicion or probable cause to stop the truck. He claims the stop was merely a pretext to conduct a warrantless evidentiary search of the truck based solely on the trooper's observation of two Hispanic males traveling north with Texas license plates.

While such conduct, if unsupported by any suspicion other than race, would clearly raise serious fourth amendment concerns, this is not the case here. Trooper Baker pulled the defendants over for speeding. It is uncontestable that traveling at any speed over the posted speed limit is a traffic offense and a trooper is justified in stopping a vehicle for the offense. Therefore, we must conclude that the stop of Carlos' vehicle was proper.

█ Carlos also claims that the search was improper because he did not voluntarily consent and, in any event, the scope of the search exceeded any purported consent. The trial court, after hearing the evidence, held the search was conducted pursuant to valid consent, and we agree.

In *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973), the Supreme Court noted that it is "well-settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." The government bears the burden of proving, by a preponderance of the evidence, that the consent was freely and voluntarily given. The voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 177, 94 S.Ct. 988, 993 n. 7, 996, 39 L.Ed.2d 242 (1974); *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48. The fact that the defendant was not told that he had a right to refuse to give consent is not, in and of itself, sufficient to invalidate the consent. *Bustamonte,* 412 U.S. at 227, 93 S.Ct. at 2047–48.

In the present case, the trial court found that Carlos' consent was given freely and voluntarily when viewed under the totality of the circumstances. Carlos contends that his consent was not freely given because he understands and speaks little English. The district court, however, concluded his ability to speak and understand English was clearly proven as he conversed with different troopers for considerable periods of time and translated the trooper's questions to Jose at the time of the stop. Based on our review of the evidence in the record we find that the district court's determination that Carlos voluntarily consented to the search was not clearly erroneous. Additionally, we note that "[a] driver may consent to a search of all areas of a vehicle to which he has joint access and control." *United States v. Morales,* 861 F.2d 396, 401 (3rd Cir.1988). Because Carlos' consent was sufficient to search the entire truck, we need not reach the question of Jose's consent.

█ The only issue remaining for us is whether the search conducted by Baker was valid in light of the consent given. Initially, we note that the scope of a consent search is limited by the breadth of the actual consent. *United States v. Gay,* 774 F.2d 368, 377 (10th Cir.1985). Baker's request to search was directly linked to his inquiry regarding the presence of drugs or weapons in the truck. Without more, police can only search areas these items may reasonably be expected to be found. The opening of door panels is not normally included in this set of areas to be searched.

Such a search is inherently invasive, and extends beyond the consent given under these circumstances.

In this case, however, we believe the dismantling of the doors was justified by probable cause. While conducting the consensual visual search, Baker's suspicions were aroused by the lack of door handles and the mismatched and ill-fitting screws on the door panels. Investigating more closely, Baker spotted packages inside the door while looking through the window opening. This visual observation established the probable cause for the troopers to extend their search and take apart the door. For these reasons the search of the truck was valid. The district court properly denied the defendant's motion to suppress the evidence.

### III. Jose's Claims

██ Jose raises several issues on appeal. First, he claims that the trial court erred in admitting hearsay statements made by Carlos under the hearsay exception allowing statements against penal interest. The statements in question were allowed into evidence because Carlos refused to testify and was found to be an unavailable witness as defined by Fed.Rule of Evid. 804(a)(1). Jose contends that pursuant to Fed.Rule of Evid. 804(b)(3), statements against penal interest must be corroborated for their trustworthiness to assure they were made for their truth and not to curry favor with the police. *United States v. Alvarez*, 584 F.2d 694 (5th Cir.1978). However, "the precise meaning of the corroboration requirement in Rule 804(b)(3) is uncertain, and is not much clarified by either legislative history or the cases." *United States v. Silverstein*, 732 F.2d 1338, 1346–47 (7th Cir.1984). The Fifth Circuit has identified a three-prong test for determining the admissibility of hearsay statements under 804(b)(3). To satisfy the three-prong test, a court must find that, (1) the declarant's statement was against the penal interest of the declarant, (2) corroborating circumstances exist indicating the trustworthiness of the statement, and (3) the declarant must be unavailable. *Id.; see also, United States v. Harrell*, 788 F.2d 1524, 1526 (11th Cir.1986); and *United States v. Mac-Donald*, 688 F.2d 224, 232–33 (4th Cir.), cert. denied, 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1982).

██ We believe this is a useful test to be used in such an analysis and we adopt it here. In applying this test, we first determine whether a statement is in fact against interest. This depends upon the circumstances of the particular case. *United States v. Guinan*, 836 F.2d 350, 355 (7th Cir.1988); *United States v. Coachman*, 727 F.2d 1293, 1296 (D.C.Cir.1984). For a statement to qualify as a 804(b)(3) statement against interest, the government must show that the statement "tended to subject" the declarant to criminal liability so that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. *United States v. Wilkus*, 875 F.2d 649, 654 (7th Cir.1989); *United States v. Candoli*, 870 F.2d 496, 509 (9th Cir. 1989). A statement satisfies this requirement if it would be probative in trial against the defendant. *United States v. Garris*, 616 F.2d 626, 630 (2d Cir.), cert. denied, 447 U.S. 926, 100 S.Ct. 3021, 65 L.Ed.2d 1119 (1980). Carlos' statements implicating himself and Jose in the transportation of marijuana and the possible involvement in a larger conspiracy surely would tend to subject Carlos to criminal liability. Therefore, the statements are clearly against penal interest, and since Carlos asserted his fifth amendment right not to testify he was not available. The only issue for us to decide is whether the statements were properly corroborated as to their trustworthiness.

Rule 804(b)(3) requires that corroborating circumstances clearly indicate the trustworthiness of a statement against interest. *United States v. Williams*, 738 F.2d 172, 178 (7th Cir.1984) (citing *United States v. Silverstein*, 732 F.2d 1338 (7th Cir.1984)); *United States v. Bagley*, 537 F.2d 162, 165 (5th Cir.1976), cert. denied, 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977). This applies to both inculpatory and exculpatory statements. *Fuson v. Jago*, 773 F.2d 55, 60 (6th Cir.1985). This Court has deter-

mined that a trial judge has considerable discretion, within the parameters of the rules of evidence, in determining whether hearsay statements contain the necessary guarantees of trustworthiness because the judge watches and evaluates credibility and demeanor. *Guinan,* 836 F.2d at 354; *Bagley,* 537 F.2d at 168. Therefore, a trial court's determination of the trustworthiness of an out-of-court statement should be upheld unless the finding is clearly erroneous. *United States v. Briscoe,* 742 F.2d 842, 846–47 (5th Cir.1984).

Jose argues that the hearsay statements lack reliability because they were made during the custodial interrogation of Carlos without an attorney and as such may have been made merely to curry favor with the authorities. *Feldman,* 761 F.2d at 388 (when currying favor with law enforcement officials is involved, there is a substantial likelihood that the statement is self-serving and, thereby, unreliable). To determine whether these facts are sufficient, we rely on the analysis adopted by this Court in *United States v. Silverstein,* 732 F.2d at 1347, which requires *some* corroborative evidence of the content of the hearsay statement. There is nothing in the record that indicates Carlos was motivated by a desire to curry favor with his interrogators. He voluntarily made his statement after being advised of his *Miranda* rights and did not enter into any plea agreements with the government. Under this analysis, we find there was sufficient evidence for the district court to conclude that Carlos' statements were corroborated by *some* other evidence in the case. In sum, the trial court's decision to admit the statements was not clearly erroneous.

■ Jose next argues that his sixth amendment confrontation rights were violated by the admission of Carlos' hearsay statements. To support his claim, Jose relies on this Court's holding in *United States v. Fairman,* 712 F.2d 315, 318 (7th Cir.1983), where we held the confrontation clause requires that hearsay statements of unavailable witnesses must be excluded at trial absent adequate indicia of reliability. *See also New Mexico v. Earnest,* 477 U.S.

648, 649–50, 106 S.Ct. 2734, 2734–35, 91 L.Ed.2d 539 (1986); *United States v. Feldman,* 761 F.2d 380, 387 (7th Cir.1985). "[T]he constitutional test [is] not whether there was an opportunity for … cross-examination, but whether there are adequate indicia of reliability to justify the placement of the hearsay statement before the jury." *Guinan,* 836 F.2d at 358 (quoting *Feldman,* 761 F.2d at 387). The Supreme Court has determined in *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), that reliability can be inferred when hearsay evidence falls within a firmly-rooted hearsay exception. From this principle, we have developed a two-part test to determine whether the statements admitted pursuant to a hearsay exception violated a defendant's confrontation rights. *United States v. Blakey,* 607 F.2d 779, 786 (7th Cir.1979) (citing *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)). First "it must be clear that the declarant actually made the statement in question." Second, "there must be circumstantial evidence supporting the truth of the statement." *Id.; see also Feldman,* 761 F.2d at 387. There is no question in this case that Carlos made the statements at issue. Thus, we move to the second part of the inquiry and note that we have previously determined that the statements were properly admitted as statements against interest under Rule 804(b)(3). As such, we concluded that the statements were supported by sufficient corroborating evidence. That evidence also satisfies the required indicia of reliability for confrontation clause purposes. *United States v. Marchini,* 797 F.2d 759, 765 (9th Cir.1986). Admitting Carlos' statements was not a violation of Jose's sixth amendment confrontation right.

Jose next contends that the trial court erred in refusing to give his theory of defense instruction to the jury, i.e., he was merely "associated" with Carlos. His proposed instruction read "Association with conspirators alone is not sufficient to constitute knowledge of the conspiracy or intent to join the conspiracy." This claim must be viewed under the standard established by this Court in *United States v.*

*Gratton,* 525 F.2d 1161 (7th Cir.1975) where we held that:

> The mere offer of the instruction does not preserve the error for appeal. If the party whose tendered instruction is refused fails to object to the refusal, stating distinctly the grounds of his objection, the Court of Appeals may review the refusal to instruct only to determine whether it constitutes plain error within the meaning of Rule 52(b) [Federal Rules of Criminal Procedure].

In this case, defense counsel failed to raise an objection to the trial court's refusal to give the proposed instruction. Therefore we must determine if the failure to give the instruction amounts to plain error.

■■■■ The plain error rule, 52(b), is to be applied cautiously and only where it can be said that a fundamental error, so basic and prejudicial has occurred that justice cannot have been done, or where the error denies a fundamental right of the accused. *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.1982) (citing *United States v. Harper,* 579 F.2d 1235, 1239 (10th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978)). Plain error also occurs where the instructional mistake had a probable impact on the jury's finding that the defendant was guilty. *United States v. Jackson,* 569 F.2d 1003, 1010 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978). To determine whether the claimed error was so prejudicial to a defendant to constitute reversible error, the submitted instructions must be viewed in light of the facts of the case and the evidence presented. *Sherrod v. Berry,* 827 F.2d 195, 203 (7th Cir.1987).

■■■■ In the instant case, the jury instructions sufficiently informed the jury of all elements needed to find Jose guilty or innocent of the crime charged. The conspiracy instruction given to the jury stated in pertinent part:

> To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt, from the defendant's own acts and statements, that he was aware of the common purpose and was a willing participant.

This instruction adequately states the applicable principle of law in the case and allows the jury to consider Jose's mere association defense. We do not believe that the additional instruction proposed by Jose would have a probable impact on the jury's finding or better serve the goals of justice. Therefore, any error that may have resulted from omitting the proposed instruction on mere association does not constitute plain error.

■■■■ Finally, Jose argues for a reduction in his sentence by objecting to the base offense level computation under the Sentencing Guidelines Drug Quantity Table. The base offense level for a drug offense is determined by reference to the type and amount of drugs involved in the defendant's offense. Under the Guidelines, Jose was sentenced at a base offense level of 26 after being found guilty of a conspiracy involving 100 kilograms of marijuana (220 pounds). Jose objects to this base level claiming he was only involved, if at all, with transporting 100 pounds of marijuana, the amount in the truck, and this would only amount to a base level of 20 resulting in a lesser sentencing range.

The sentencing court rejected this objection, and so do we. Initially, we note that both Jose and Carlos stipulated that a conspiracy, if proven, was to distribute more than 100 kilograms. It is evident from the record that they entered into this stipulation to avoid the formality of the government presenting evidence to the jury of their involvement in more than the 100 pounds of marijuana found in the truck. Rather than cause delay and expense the defendants stipulated to the amount. Furthermore, the jury determined all the evidence proved Jose was guilty beyond a reasonable doubt of participating in a conspiracy involving the stipulated amount of drugs and convicted him of the conspiracy. This conviction was based in part on the lack of evidence by the defendant that he only participated in this one delivery, as well as evidence that Jose picked up the

truck and contacted Carlos about the delivery indicating that he may be involved in the larger drug conspiracy. The jury could reasonably rely on such evidence to convict Jose of the conspiracy charged. Based on the stipulation, the jury's conviction, and the district court's findings, we conclude that the overall circumstances support Jose's conviction on the conspiracy involving 100 kilograms. Therefore, the trial court's sentence is affirmed.

### IV.

For the foregoing reasons, the district court's order denying Carlos Garcia's Motion to Suppress is AFFIRMED as is the judgment and sentencing of Jose Garcia by the district court.