UNITED STATES of America,

v.

Pasquale MARCY and Fred Roti.

No. 90 CR 1045.

United States District Court,
N.D. Illinois, E.D.

Dec. 10, 1992.

See also, 814 F.Supp. 673.

Terence Patrick Gillespie, Marc William Martin, Genson, Steinback & Gillespie, Thomas Michael Breen, Martin, Breen & Merrick, Chicago, IL, for Fred Roti.

Tom Durkin, Asst. U.S. Atty., Chicago, IL, for U.S.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendants Pasquale "Pat" Marcy ("Marcy") and Fred Roti ("Roti") have moved to redact portions of the 11–4–87 Cooley/Moy tape recorded conversation and to preclude admission of the 6–22–89, 13:29 telephone conversation between Roti, Marcy, and Alderman Banks ("Banks"). For the reasons set forth below, we grant in part and deny in part the defendants' motion to redact portions of the Cooley/Moy conversation and deny Marcy's motion to preclude admission of the telephone conversation.

## I. DISCUSSION

### A. The Cooley/Moy Conversation

Defendants have moved to redact five portions of the taped conversation. Because the government has no objection to redacting three of these sections, only two remain at issue.[1]

#### (i) The *Hawkins* Fix

The first contested segment of the 11–4–87 Cooley/Moy conversation involves the mention of Judge Thomas Maloney and an attempt to fix the outcome of the *Hawkins* case—an El Rukn trial. Conversation at pp. 2–4. Defendants argue that introduction of an alleged attempt to fix another case is irrelevant and prejudicial. The government claims that the conversation demonstrates Moy's involvement in the *Chow* fix and is admissible as a statement against Moy's personal interest. Fed.R.Evid. 804(b)(3). Because the defendants have not challenged the conversation's admissibility on other grounds, the question is whether the interchange is relevant.[2]

Here, the government asserts that this entire exchange is relevant because it provides statements in a context which demonstrate Moy's involvement in the *Chow* fix.[3] At most, however, the exchange establishes that Moy recognized Judge Maloney's name and remembered that he presided over the *Chow* case. This, by itself, is not enough to establish involvement in fixing that case. Moreover, while Cooley makes statements regarding the details of the *Chow* fix, Moy does not affirm those statements. Instead, Moy simply asks if Judge Maloney is in trouble now. Again, this does not tend to establish Moy's involvement in the fix. Because there is no connection to this case, then, this segment is not relevant to the charges at hand and must be redacted.[4]

### B. The *Chow* Fix

The second contested exchange involves a discussion of the fee paid to Cooley to fix the *Chow* case and the way that Moy came to ask Cooley to fix the case. Conversation at pp. 6–16. Defendants object to the conversation as hearsay which does not constitute statements made during the course of and in furtherance of a conspiracy. The government responds that the interchange is admissible under 804(b)(3) as a statement against interest.[5] Because Moy makes state-

---

1. The following sections are uncontested and shall be redacted: Page 1 through page 2, ending at the line "Wander here, wander there."; Page 4, beginning at the line "Well, right now, what I didn't....", through p. 6, ending at the line "they're too greedy."; page 16, beginning at the line "Now ... now, that Washington's got...." through the end.

2. Defendants have not challenged the characterization of this conversation as a statement against interest.

3. After the two men mention an article which describes a judge who took a bribe in an El Rukn case and then nonetheless sent the defendant to the electric chair, the following exchange occurs:

   Cooley: Does that [Judge Thomas Maloney's] name ring a bell?

   Moy: A little bit. I that the one that sit ... sit on that big case before?
   Cooley: That was the one on Lenny [Chow's] case. That's right. He tried the same bullshit on that case. Remember ... remember the problem we had when he put us over for a day and he was strokin'. Probably looked to get some more money....
   Moy: Is he in trouble now?
   Conversation at p. 3.

4. Specifically, the following portion of the conversation should be redacted: page 2, beginning at the line "You were telling me about....", through page 4, ending with the line "got some people in trouble."

5. A statement against interest is one which "tend[s] to subject the declarant to civil or crimi-

ments throughout this portion of the conversation indicating familiarity and involvement with the fixing of the *Chow* case and tending to subject him to criminal liability for fixing the case, the interchange is admissible as a statement against interest.[6,7]

Defendants, however, argue that even if the conversation is admissible, Moy's statement that he thinks Roti got Cooley's name from Pat Marcy should be redacted. Conversation at p. 9. Defendants contend that the statement is legally irrelevant, Fed.R.Evid. 401–402, that Moy lacked personal knowledge of how Roti got Cooley's name, Fed.R.Evid. 602, that it constitutes an inadmissible lay opinion, Fed.R.Evid. 701, and that the government fails to demonstrate that his statement was made during the course of, or in furtherance of, the conspiracy, Fed.R.Evid. 801(d)(2)(E). For its part, the government offers the entire conversation as a statement against interest.

■ We begin by observing that there is nothing in the sentence at issue which so tends to subject Moy to criminal liability that he would only have made it if he believed it to be true. Moreover, although the sentence is part of a larger statement against interest, and may arguably provide background and be brushed with the indicia of reliability, it is appropriate to parse a larger statement to exclude those portions which do not qualify as statements against interest under 804(b)(3). *See United States v. Porter,* 881 F.2d 878, 882–83 (10th Cir.1989).

■ We turn, then, to the defendants' objections. First, the statement is clearly relevant, in that it can be used to link Marcy to the *Chow* fix and to shed light on the structure of the conspiracy. However, defendants correctly point out that there is no evidence suggesting that Moy has personal knowledge of how Roti got Cooley's name. Without such evidence, the statement is inadmissible hearsay. Nor is there anything to suggest that it is an admissible lay opinion. Finally, this is not a statement made within the course of, or in furtherance of, the conspiracy to fix the *Chow* case. The objectives of that conspiracy were long past accomplished, and this statement does not involve an effort to hide the conspiracy. Fed.R.Evid. 801(d)(2)(E). Accordingly, without evidence demonstrating that Moy had personal knowledge that Roti got Cooley's name from Marcy, this statement constitutes inadmissible hearsay and must be redacted.[8]

## II. THE 6–22–89 13:29 TELEPHONE CONVERSATION

■ Marcy seeks to preclude admission of the June 22, 1989 telephone conversation between Roti, Marcy and Banks. Marcy argues that the conversation is irrelevant to the charges at issue in this case, Fed.R.Evid. 402, and, even if it is relevant, is prejudicial to Banks in that it would tarnish his reputation. Fed.R.Evid. 403. The government contends that it offers the conversation as part of its proof of the existence and structure of the enterprise at issue. The government points out that we have previously ruled that it is permissible for the government to offer evidence to prove the existence and structure of the enterprise. March 19, 1992 Memorandum Opinion at p. 2.

---

nal liability," such that "a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R.Evid. 804(b)(3). If the statement would be probative in a trial against declarant, then it satisfies this requirement. *United States v. Garcia,* 897 F.2d 1413, 1420 (1990). Statements against interest are only admissible as a hearsay exception if the declarant is unavailable as a witness.

6. We will reconsider this decision if the government is unable to offer proof that Moy is unavailable.

7. For example, when Cooley asks Moy how he came to call him, Moy answered, "Alderman Roti and I, I, think he got it from Pat Marcy." Conversation at p. 9. Moy added that Onesto had originally had the *Chow* case, but because Eddie Chan was not happy with Onesto, Chan asked Moy to find somebody to take care of it and make sure he does a good job. Conversation at p. 11. During the conversation, Moy also admitted that he made $5,000 from the *Chow* fix and that he paid Roti an additional $500 payoff. Conversation at pp. 14–15.

8. The contested sentence should be redacted to read as follows: "Alderman, Alderman Roti...." Conversation at p. 9.

While we have ruled that the government may offer evidence tending to demonstrate the existence and structure of the enterprise, we have barred such evidence when it is irrelevant or unfairly prejudicial. At first glance, the conversation here does not appear relevant. The parties on the telephone did not discuss anything which relates to the charged offenses, nor is there anything establishing that Banks was asked to do anything illegal. Nonetheless, we find that the conversation is relevant.

The government has charged defendants with maintaining and exerting control over official decisions. The conversation here tends to demonstrate that Marcy enjoyed influence over Alderman Banks, and was in a position to give orders to Alderman Roti.[9] The fact that Marcy tended to exercise influence over Banks, then, even in this innocuous context, may be relevant in establishing the enterprise. Furthermore, the conversation tends to demonstrate that Marcy gave orders and Roti carried them out and is therefore also relevant in establishing the structure of the enterprise. Accordingly, the conversation will not be precluded as irrelevant.

■ Nor should the conversation be precluded as prejudicial. Marcy does not assert that he, himself, will be prejudiced, but that Banks' reputation will be tarnished by association. Federal Rule of Evidence 403 is not concerned with prejudice to third parties. Instead, " '[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis...." Notes of Advisory Committee to Rule 403. Marcy has not offered any explanation of how this conversation would create an 'undue tendency to suggest decision on an improper basis.' Accordingly, we deny Marcy's motion to preclude admission of the 6–22–89 telephone conversation.

9. Some relevant portions of the conversation include:
Marcy: Uh, listen pal. This is a must.
Banks: Okay.
(later)
Marcy: You gotta go in and see this Irish cocksucker (IA) if you have to take Freddie with you. I gotta get this girl straightened out.
Banks: It, it'd be my pleasure. Can he go tomorrow?

## Conclusion

For the foregoing reasons, we grant in part and deny in part defendants' motion to redact portions of the 11–4–87 Cooley/Moy tape recorded conversation, and deny Marcy's motion to preclude admission of the 6–22–89 telephone conversation. It is so ordered.

Marcy: Freddie? Wait a while. Can you meet, uh, Banks tomorrow and go with him tomorrow?
(later)
Marcy: You get a hold of Freddie. We gotta do this. If it ain't there, do it somewhere else. I gotta do this.
Banks: I know, I'm hearing you.