42 F.3d 1386
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Denise Ann GITTENS, Defendant-Appellant.
 No. 94-5017.
 United States Court of Appeals, Fourth Circuit.
 Submitted November 8, 1994.
Decided December 8, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. William L. Osteen, Sr., District Judge. (CR-93-140)
 Daniel S. Johnson, Winston-Salem, NC, for appellant.
 Walter C. Holton, Jr., United States Attorney, Paul A. Weinman, Assistant United States Attorney, Greensboro, NC, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER, HALL, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Denise Ann Gittens was indicted for violations of 21 U.S.C.A. Secs. 841(a)(1), (b)(1)(A), and 846 (West 1981 & Supp.1994), conspiracy to distribute fifty grams or more of cocaine base. Following the district court's denial of Gittens's motion to suppress certain evidence, Gittens pled guilty to the charges. The district court then entered final judgment and sentenced Gittens to one hundred twenty-one months imprisonment. Gittens now appeals and asserts that the court erred in denying her suppression motion. We affirm.
 
 
 2
 The facts are straightforward. On June 4, 1993, the Winston-Salem Police Department received an anonymous telephone tip about drug activity in Room 254 of the Hampton Inn on University Parkway. Narcotics officers arrived at the room, knocked on the door, and announced themselves as police officers. Two black females answered the door, Gittens and Nicole Allen.
 
 
 3
 One officer informed the women about the phone tip. Gittens and Allen told the officers that there were no drugs in the room, but that two known male drug dealers had left with pistols, pagers, and large amounts of cash. While the officers were talking with the women, the phone rang in the room. One woman told the officers that the two men were coming back. The officers waited until the men returned, at which time they arrested them. The officers found firearms, crack cocaine, and $13,000 cash on the men. Gittens and Allen agreed to accompany the officers to the police station to make statements.
 
 
 4
 Robert Williams, one of the men who was arrested, gave a statement to the police. Williams stated that he was a bodyguard for the other man, William Felix. Williams told the police that Felix was a drug dealer and had several locations for his drug distribution, including 535 Shamel Court in Winston-Salem. Williams also told the officers that he knew both Gittens and Allen from New York and that he believed them to be couriers for Felix.
 
 
 5
 Meanwhile, another police officer interviewed Gittens and Allen. The women identified two addresses in Winston-Salem where Felix had taken them. Neither woman identified 535 Shamel Court. During the interview, the officer learned that Gittens's driver's license had been revoked in Virginia and that she did not have a license in either New Jersey or New York. Because the women's stories coincided with Williams's account, the police officers agreed to release the women and arranged for them to take a bus to New York.
 
 
 6
 At the same time, other officers began surveillance on 535 Shamel Court in preparation for executing a search warrant. As officers approached the residence with the search warrant, one of the surveillance officers notified the approaching officers that a female had arrived at the residence in a cab and placed a bag in the trunk of a Mercury parked in the driveway.
 
 
 7
 The woman entered the house, emerged a few minutes later, and entered the Mercury. The approaching officers stopped the Mercury and discovered Gittens at the wheel. Gittens was arrested and a search of the bag in the trunk revealed crack cocaine. Later investigation revealed that the Mercury was rented in New York to a Jean Mabel Carr and that Gittens used a key when she opened the trunk and started the engine. This incident occurred at the same time that the bus bound for New York (which Gittens had agreed to board) was leaving Winston-Salem.
 
 
 8
 Gittens was arrested for driving without a valid driver's license. However, she was later indicted on a drug conspiracy charge arising from the incident described above. Gittens moved to suppress the drugs found in the trunk of the Mercury, alleging that the search was conducted without a search warrant and without probable cause to search the vehicle in violation of her Fourth Amendment rights. The Government countered that Gittens lacked standing to contest the search.
 
 
 9
 Following a hearing on the matter, the district court denied the motion to suppress, finding that Gittens failed to demonstrate that she possessed a reasonable expectation of privacy in the contents of the rented Mercury. Gittens pled guilty, but now appeals. She alleges that the district court erred in denying her suppression motion.
 
 
 10
 We review de novo the trial court's conclusions involved in a suppression determination, but factual determinations informing those conclusions are reviewed under a clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992). To challenge the validity of a search, a defendant must demonstrate a reasonable expectation of privacy in the area searched. Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980); United States v. Chadwick, 433 U.S. 1, 7 (1977) (Fourth Amendment protects people from unreasonable government intrusion into their legitimate expectations of privacy); Ramapuram, 632 F.2d at 1154. Gittens concedes this but claims, relying on United States v. Rusher, 966 F.2d 868 (4th Cir.1992) and United States v. Garcia, 897 F.2d, 1413 (7th Cir.1990), that she "enjoys a presumption that she had permission to use the car, and thus a reasonable expectation of privacy." In Rusher, we held that the driver, Hanney, had standing to challenge the search because there was testimony that he had borrowed the truck from a friend and no evidence that he was not legitimately in possession of the truck. Even in Garcia, which well may not represent the law of this circuit, there was at least some evidence put forth by the driver that he had rightful possession of the car. Here, Gittens offered no evidence at the suppression hearing that she had rightful possession to the car. Moreover, the government produced evidence that the car was rented to another party, that Gittens' license had been revoked, and that she had said she was going to take the bus back to New York.
 
 
 11
 Much closer to the case at hand is United States v. Wellons, 32 F.3d 117 (4th Cir.1994). There, the defendant was arrested following the discovery of drugs in a rental car which he was driving but for which he was not listed as an authorized driver. Finding that Wellons did not have a legitimate privacy interest in the car, we opined that no Fourth Amendment violation occurred when the rental car and its contents were searched without a warrant.
 
 
 12
 Here, as in Wellons, the district court found that although there was evidence that Gittens used a key to open the trunk and start the car, that was insufficient to show that she had a legitimate expectation of privacy in the vehicle. Gittens offered no evidence that she was given permission, either express or implied, to operate the vehicle. In fact, Gittens presented no evidence whatsoever on the standing issue at the suppression hearing.
 
 
 13
 We also find that this case is similar to United States v. Obregon, 748 F.2d 1371 (10th Cir.1984). There, Obregon was driving a rented Mercury on an interstate highway in New Mexico when he was stopped at a roadblock. Obregon's name was not on the rental agreement and the tags were expired. An ensuing search revealed cocaine in the car. Obregon proffered no evidence tending to show a relationship with the rental car company that would have allowed him to drive the car legitimately. Id. at 1374.
 
 
 14
 Moreover, the district court's findings of fact were not clearly erroneous. The only evidence linking Gittens with the Mercury was the testimony of the officers that Gittens used a key to open the trunk and enter the car. Gittens drove the car only a few feet before being stopped. The district court found that Gittens's license had been revoked, that she promised to take a bus back to New York, and that the Mercury was rented by "someone in New York." Gittens presented no evidence that she had been given permission by anyone to use the car. Thus, we cannot say that the district court's findings of fact were clearly erroneous.
 
 
 15
 Because Gittens failed to produce any evidence to demonstrate a legitimate expectation of privacy in the car, she failed to meet her burden to show standing to challenge the search of the Mercury's trunk. The district court therefore properly denied her motion to suppress evidence obtained from the search. Accordingly, we affirm her conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 16
 AFFIRMED.