Agosti, J.,
with whom Becker, J., agrees, concurring:
I write separately to underscore my opinion that Florida v. Jimeno, 500 U.S. 248 (1991), supports the majority view and is misapplied by the dissent. The rule enunciated in Jimeno requires an inquiry as to whether it is objectively reasonable to construe the consent to search the vehicle in this case to include consent to dismantle the vehicle. See id. at 249. I conclude that no reasonable police officer could expect that by being told that he can “go ahead and look” for drugs and by hearing “yes” in response to the officer’s request for permission to search, the officer is entitled to take apart the vehicle. Nor would any reasonable person expect such a search when giving that consent.
The facts, holding and dictum of Jimeno apply to the search of closed containers inside a vehicle. In Jimeno, the officer received consent to search a vehicle for narcotics. The officer opened a folded brown paper bag on the vehicle’s passenger floorboard and found cocaine inside. The United States Supreme Court concluded from these simple facts that “it was objectively reasonable for the police to conclude that the general consent to search respondent’s car included consent to search containers within that car which might bear drugs.” Id. at 251. “A reasonable person may be expected to know that narcotics are generally carried in some form of a container.” Id. In so finding, the Court distinguished Jimeno from State v. Wells, 539 So. 2d 464 (Fla. 1989), aff’d on other grounds, Florida v. Wells, 495 U.S. 1 (1990).[1] Jimeno, 500 U.S. at 251-52. In Wells, the warrantless search of a locked briefcase in a vehicle’s trunk was found to be unreasonable despite a consent to search the trunk. The Jimeno Court stated that “[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag.” Id. at 251-52. If the Jimeno Court believed that breaking open a locked briefcase was unreasonable, *83 it would certainly conclude that dismantling the structure of a vehicle is also unreasonable.
The dissent concludes that “upon noting previous tampering, . . . [i]t would have been clear to the officer that a part of the vehicle, not ordinarily accessible, had been previously opened and was a compartment which easily could have contained drugs.” This may very well be true, given the officer’s training and expertise in crime detection, but it is not the standard set forth in Jimeno. Rather than analyze the vehicle search from the officer’s perspective of where contraband may be hidden, we are required to judicially determine ‘ ‘what would the typical reasonable person have understood by the exchange between the officer and the suspect.” Jimeno, 500 U.S. at 251.
The dissent would extend the conclusion of Jimeno well beyond folded paper bags, to the very structure of the vehicle itself. In my opinion, this defies the standard of objective reasonableness required by Jimeno and as applied by the district court below.
All the cases cited by the dissent involve searches of containers or easily accessed compartments within a vehicle. None stand for the dissent’s view that a general consent to search a vehicle includes dismantling the vehicle until the driver explicitly stops the search in progress. To illustrate the point, in United States v. Gutierrez-Mederos, 965 F.2d 800, 803-04 (9th Cir. 1992), cited by the dissent, the circuit court concluded that unlocking a side panel compartment inside the hatchback area of a vehicle did not exceed the scope of the driver’s general consent to search for drugs or weapons because the nature of that search was not invasive. The court specifically noted:
The record indicates that [the trooper] did not pry open or break into the side panel, but instead used the key. Nor did [trooper] Anderson force the loose cardboard divider apart, but rather pulled it back.
Id. at 804. The court obviously noted the significance of the lack of breaking or force in conducting the search. Had the trooper removed screws or otherwise dismantled the side panel compartment in Gutierrez-Mederos, the circuit court may well have concluded that the search exceeded the scope of the driver’s general consent.
United States v. Garcia, 897 F.2d 1413 (7th Cir. 1990), is also instructive. There, after the occupants consented to a search for drugs or weapons, the trooper’s “suspicions were aroused when he noticed the lack of window cranks and door handles on both doors and mismatched and ill-fitting screws that held the interior door panels in place.” Id. at 1416. Upon closer visual inspection, *84 the trooper and another agent “observed grey packages wedged inside the door.” Id. They removed the driver’s side door panel and found marijuana. Id. The circuit court upheld the search on the ground of probable cause, concluding that the “visual observation” of the packages inside the door established probable cause. Id. at 1420. However, before doing so, the court analyzed the search based on the occupants’ general consent and stated:
[The trooper’s] request to search was directly linked to his inquiry regarding the presence of drugs or weapons in the truck. Without more, police can only search areas these items may reasonably be expected to be found. The opening of door panels is not normally included in this set of areas to be searched. Such a search is inherently invasive, and extends beyond the consent under these circumstances.
Id. at 1419-20 (emphasis added). Thus, it is clear that the court in Garcia would not have approved dismantling the truck based on consent alone. See also State v. Swanson, 838 P.2d 1340, 1345, 1345 n.5 (Ariz. Ct. App. 1992) (relying on Garcia and Jimeno and concluding that tearing a car apart by removing door panels exceeded the scope of consent to “take a look in the car” for drugs, weapons or large sums of money).
I doubt any reasonable citizen would believe he or she was consenting to the kind of search that occurred here based upon the exchange that occurred here. Nor could a reasonable officer expect, based upon the dialog that occurred here, that permission had been given to remove a backseat, pull up carpeting, or remove screws from a panel below a glove box.
A reasonable person, contrary to the supposition of the dissent, would not be thinking about all the possible ingenious devices employed for drug concealment by the enterprising drug trafficker much less be consenting to an officer’s investigation of all possible manner of smuggling when that citizen authorizes a search.
In the context of this case, the Fourth Amendment’s protection from police overreaching is embodied in the requirement of objective reasonableness. The dissent’s view would erode in a serious and significant way this important constitutional protection.

In Wells, the Florida Supreme Court suppressed the fruits of the search based upon an analysis of the reasonableness of the consent given to the search. Wells v. State, 539 So. 2d at 467-68. The United States Supreme Court affirmed the suppression based upon an inventory search analysis. Florida v. Wells, 495 U.S. at 3-5.