**UNITED STATES of America,**

v.

**Jemel Steward RYAN.**

**No. 99–CR–504.**

United States District Court, E.D. Pennsylvania.

Dec. 29, 2000.

Floyd Miller, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Michael A. Caudo, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

BRODY, District Judge.

Jemel Steward Ryan was indicted for violating 18 U.S.C. § 922(g)(1), which prohibits a convicted felon from possessing firearms. Ryan moved to suppress: (1) evidence of a firearm and ammunition that police seized from a station wagon in which he had been riding, and (2) a statement he gave to police detectives.[1] On September 25, 2000, I held a suppression hearing.

## FINDINGS OF FACT

■ On March 7, 1999, at approximately 5 p.m., Police Sergeant Joseph Gindele was patrolling the 19th police district of Philadelphia. Gindele was in police uniform and his police vehicle was marked. As Gindele was driving on N. 60th Street, past Girard Avenue and towards Thompson Street, he noticed an expired inspection sticker on the front windshield of a Chevy station wagon proceeding in the opposite direction.[2]

Gindele made a U-turn and signaled, with lights and sirens, for the station wagon to stop. The station wagon pulled over near the intersection of N. 60th St. and Girard Ave. Ryan and Gindele got out of their respective vehicles and approached each other. When Gindele asked to see Ryan's driver's license and registration, Ryan fled on foot. Gindele returned to his car and called for assistance over the police radio system.

At about 5:08 p.m., Philadelphia Police Officers Lamonte Adams and Michael Waters were patrolling the 19th police district when they heard Gindele's radio message. As Adams and Waters were responding to Gindele's request for back-up, Gindele spotted Ryan lying behind a concrete wall near the 500 block of N. 59th Street. Gindele got out of the car and drew his service revolver. Approaching Ryan undetected, Gindele ordered Ryan to put his hands up, handcuffed him and placed him in a police emergency patrol wagon, which had arrived on the scene. Gindele arrested Ryan because the inspection sticker on the station wagon had expired and Ryan fled when a uniformed police officer stopped him and asked to see a license and registration.

Upon taking Ryan into custody, Gindele instructed Adams and Waters to help transport Ryan back to the station wagon for a vehicle investigation. From approximately 5:10 p.m. to 5:20 p.m., Ryan sat handcuffed in the police emergency patrol vehicle, while Gindele prepared four traffic citations for violations of 75 Pa.C.S.A. § 4703(a) (invalid inspection certificate); § 1501(a) (unlicensed driver); § 1311(b) (failure to carry registration); and § 1786(f) (failure to carry financial responsibility documentation). (See Tr. Exs. GS-5 through GS-8). As the traffic citations were being prepared, Adams opened an unlocked door to the station wagon and retrieved a .22 caliber Luger handgun from the floor of the car. (See Tr. Exs.

---

1. Ryan's motion papers imply that some physical evidence may have been seized from Ryan himself. The government is not seeking to introduce any such evidence at trial.

2. I take judicial notice that a certificate of inspection must be affixed to the front, driver's side portion of the windshield. See 67 Pa. Admin. Code § 175.41(e)(1).

GS–2 (gun); GS–3 (ammunition)). Adams completed a property receipt form for the gun. (*See* Tr. Ex. GS–4).

Ryan was transported to the Southwest Detectives Division ("SWDD"). At SWDD, Detective Linda Carter read Ryan his *Miranda* rights and interviewed him. At about 7:15 p.m., Ryan gave a statement which he signed as Gerald Kemp. Through fingerprint analysis, Detective Carter later learned that Ryan's name was not Gerald Kemp, but Jemel Steward Ryan. Jemel Steward Ryan is a convicted felon.

Through a computer search, Detective Carter also discovered that the Luger firearm had been reported stolen. (*See* Tr. Ex. GS–10). Ryan has not claimed ownership or possession of the firearm. In addition, while the Chevy station wagon had not been reported stolen and was not impounded, neither the car nor the license tags were registered in the name of Jemel Steward Ryan or Gerald Kemp. (*See* Tr. at 99–100). No keys to the car were recovered. (*See* Tr. at 24–25, 69–70). Ryan has not claimed that he was riding in the station wagon with the owner's permission, or that he had ever occupied the station wagon before March 7, 1999. In his statement to Detective Carter, Ryan expressly disclaimed ownership of the firearm or the station wagon. (*See* Tr. Ex. GS–11).

## CONCLUSIONS OF LAW

Ryan moves, under the Fourth Amendment, to suppress the firearm and ammunition as the fruit of an illegal search, and to suppress his police statement as the fruit of an illegal arrest.

### I. *Firearm and Ammunition*

█ Because the Fourth Amendment right to be free from unreasonable searches and seizures is personal, a defendant must establish standing to assert that right. *See United States v. Padilla*, 508 U.S. 77, 81–82, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993); *Government of Virgin Islands v. Williams*, 739 F.2d 936, 938 (3d Cir. 1984). The burden of demonstrating standing rests with the defendant. *See United States v. Salvucci*, 448 U.S. 83, 86–95, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).[3] To establish standing, the individual challenging the search must have a reasonable and actual expectation of privacy in the property searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104–06, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Baker*, 221 F.3d 438, 441 (3d Cir.2000). Ryan has failed to establish a reasonable and actual expectation of privacy in either the station wagon or the firearm.

█ In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), where the government sought to introduce a rifle and rifle shells that police had seized during an automobile search, the U.S. Supreme Court held that a car passenger who asserts neither a "property nor a possessory interest in the automobile, nor an interest in the property seized," has no reasonable expectation of privacy under the Fourth Amendment. *Id.* at 148, 99 S.Ct. 421. While outright ownership is not required for a defendant to assert a reasonable and actual expectation of privacy in a motor vehicle, there must be "clear evidence of continuing possession and control, as well as no evidence that the driver obtained the car illegitimately." *United States v. Baker*, 221 F.3d 438, 443 (3d Cir.2000) (standing found where defendant exerted substantial control over a car that

---

**3.** In *United States v. Garcia*, 897 F.2d 1413, 1417–18 (7th Cir.1990), the Seventh Circuit held that, where the dispositive factor negating a defendant's expectation of privacy in a motor vehicle is that the vehicle was stolen, and the defendant challenges the stolen status of the vehicle, the government must establish that the vehicle was stolen. While it is unclear whether the Third Circuit would adopt a similar burden-shifting analysis, the stolen status of the Chevy station wagon has not been placed in issue by either the government or Ryan, and the Court's analysis does not turn on it.

he had borrowed from a friend, had been driving it for four to six weeks, and carried the keys with him).

There is no "clear evidence" that Ryan continuously possessed and controlled the Chevy station wagon. In fact, Ryan has not claimed, presented or demonstrated any property or possessory interest in the vehicle searched or firearm seized. The car and license tags were not registered in Ryan's name, no keys to the car were recovered, and there is no evidence that defendant was riding in the car with the owner's permission or that he had ever occupied the car before March 7, 1999. In addition, the Luger firearm was reported stolen, and Ryan expressly disavowed any interest in the firearm in his statement to Detective Carter. Ryan has not claimed otherwise in these proceedings.

Without offering evidence of a property or possessory interest in the station wagon or firearm, Ryan has failed to satisfy the Fourth Amendment requirement of a reasonable and actual expectation of privacy. *See Government of Virgin Islands v. Williams,* 739 F.2d 936, 938–39 (3d Cir. 1984). Therefore, the motion to suppress the firearm and ammunition will be denied.

## II. *Statement to Detective Carter*

Ryan also moves to suppress the statement he gave to Detective Carter. Under the Fourth Amendment, Ryan's statement must be suppressed if it was the fruit of an unlawful traffic stop or unlawful arrest.

### (a) *Validity of the Automobile Stop*

An automobile stop constitutes a Fourth Amendment "seizure," and must not be "unreasonable." *See Whren v. United States,* 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Automobile stops are reasonable where a police officer observes a violation of state traffic regulations. *See United States v. Kithcart,* 218 F.3d 213, 219 (3d Cir.2000); *United States v. Moorefield,* 111 F.3d 10, 12 (3d Cir.1997). The police may also stop an automobile to check for a driver's license and registration if there is "articulable and reasonable suspicion" that a traffic violation has occurred. *See United States v. Johnson,* 63 F.3d 242, 245 (3d Cir.1995). Because Gindele stopped the Chevy station wagon upon personal observation of a traffic violation (the expired certificate of inspection, in violation of 75 Pa.C.S.A. § 4703(a)), the automobile stop complies with the Fourth Amendment.

### (b) *Validity of the Warrantless Arrest*

Given that the automobile stop was justified, Ryan's statement to Detective Carter should be suppressed only if Gindele illegally arrested Ryan. While a warrant is generally required for an arrest, the Fourth Amendment permits warrantless arrests where: (a) state law authorizes a warrantless arrest, and (b) the arrest does not violate the U.S. Constitution. *See Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (validity of arrest depends, initially, upon whether state law authorizes arrest); *United States v. Day,* 455 F.2d 454, 455 (3d Cir.1972) (legality of state officer's arrest for violation of Motor Vehicle Code "must be determined by state law").

Pennsylvania state law authorizes warrantless arrests where a misdemeanor is committed in the presence of a police officer. *See Cambist Films, Inc. v. Duggan,* 475 F.2d 887, 889 (3d Cir.1973); *Commonwealth v. Clark,* 558 Pa. 157, 163, 735 A.2d 1248, 1251 (1999); *see also* Pa. R.Crim. P. 101(2)(a). Pennsylvania's practice reflects the "ancient common-law rule" that a peace officer could arrest without a warrant for a misdemeanor committed in his presence. *United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Accordingly, if Ryan committed a misdemeanor in Gindele's presence, then Gindele was authorized to arrest Ryan under Pennsylvania law. *See Commonwealth v. Streater,* 422 Pa.Super. 502, 619 A.2d 1070 (1993).

In Pennsylvania, it is a misdemeanor for any driver of a motor vehicle to flee or attempt to elude a pursuing police officer. Section 3733(a) of the Vehicle Code, as amended, provides:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given visual or audible signal to bring the vehicle to a stop, commits a misdemeanor of the second degree.

75 Pa.C.S.A. § 3733(a). In 1994, the Pennsylvania legislature upgraded this violation from a summary offense to a misdemeanor. *See* P.L. 1337, No. 154, § 3 (Dec. 27, 1994). Since this misdemeanor occurred in Gindele's presence, Pennsylvania law permitted him to arrest Ryan.

Ryan's arrest did not violate the U.S. Constitution because there is no Fourth Amendment claim that Gindele lacked "probable cause" to arrest Ryan under § 3733(a), or that there was any other constitutional violation.[4] Gindele had "probable cause" to believe that Ryan committed the misdemeanor of fleeing or attempting to elude a police officer, after visual or audible signal to bring the vehicle to a stop. Gindele signaled with lights and sirens for the Chevy station wagon to stop. Every witness and exhibit presented at the suppression hearing indicated that Ryan was the driver.[5] When Ryan got out of the car, Gindele asked to see his driver's license and registration. Rather than producing these documents, Ryan fled on foot. Gindele personally pursued Ryan and called for back up.[6]

Under these circumstances, Gindele had probable cause to believe that Ryan committed a misdemeanor in his presence. Because Ryan's arrest did not violate Pennsylvania law or the U.S. Constitution, his statement to Detective Carter of March 7, 1999 will not be suppressed at trial.

### *ORDER*

**AND NOW,** this 29th day of December 2000, for the reasons set forth in the foregoing Memorandum, it is **ORDERED** that defendant's Motion To Suppress Physical Evidence (Docket Entry # 19) is **DENIED.** It is **FURTHER ORDERED** that the government shall file all suppression-hearing exhibits with the Clerk of the Court.

---

4. Other than his Fourth Amendment challenge, Ryan raises no constitutional issue. He makes no claim, for example, that the police stop or arrest were racially motivated.

5. Ryan concedes that he was driving the Chevy station wagon for purposes of this motion. *See* Letter from Michael A. Caudo to Hon. Anita B. Brody, dated Oct. 19, 2000, at 2–3.

6. Ryan has presented no evidence that Gindele's police vehicle was not clearly identifiable by its markings, or that Gindele was not in uniform. The uncontradicted testimony at the suppression hearing establishes that the police car was marked, and Gindele was in uniform.