**AMERICAN AUTOMOTIVE ACCESSORIES, INCORPORATED and Emalfarb Investment Corporation, Plaintiffs–Appellants,**

v.

**Alan FISHMAN, Defendant–Appellee.**

No. 98–1266.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1998.

Decided April 23, 1999.

George W. Hamman, Marvin Benn, Stephen J. Cassin (argued), Hamman & Benn, Chicago, IL, for Plaintiffs–Appellants.

Steven M. Ruffalo (argued), Jason R. Surber, Fuchs & Roselli, Chicago, IL, for Defendant–Appellee.

Before WOOD, JR., RIPPLE and ROVNER, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

American Automotive Accessories, Incorporated ("American") and Emalfarb Investment Corporation ("Emalfarb Investment") filed this action for civil damages against Alan Fishman based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). The complaint alleges that Fishman, the owner of a currency exchange, fraudulently cashed some seventy checks embezzled by American and Emalfarb Investment employee Nick Favia over a period of six years. With the consent of the parties, the matter was referred to a United States Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(c)(1). The magistrate judge granted summary judgment to Fishman. American and Emalfarb Investment appeal.

## I. BACKGROUND

American and Emalfarb Investment are real estate development companies. Mark Emalfarb served as the President and Chief Executive Officer of both American and Emalfarb Investment. Throughout 1991, Emalfarb Investment was engaged in the development of townhouses in Mundelein, Illinois. From 1992 to 1996, American was in the business of building single-family homes in Round Lake Beach, Illinois. Nick Favia was employed by Emalfarb Investment and, subsequently, by American and served as project manager for the two developments.

Favia's duties as project manager included making check requests and delivering payments to vendors, subcontractors, and suppliers. When Favia needed a check from Emalfarb Investment or American, he would prepare a check request form which included the amount of the payment and the name of the vendor to whom the check was to be made payable. Favia would mail the request form to Mark Emalfarb who lived in Jupiter, Florida. The check then would be prepared in Emalfarb's Florida office and signed by Emalfarb. The executed checks were mailed back to Favia in Illinois for distribution. Occasionally, Favia or the Illinois offices would prepare the checks and then send them to Florida for Emalfarb's signature.

In February 1995, Emalfarb discovered that Favia had been requesting checks made payable to fictitious payees. Emalfarb asked Favia several times for backup documentation on several checks made out to Libertyville Lumber. When Favia failed to provide documentation for the payments, Emalfarb contacted Libertyville Lumber to request copies of the invoices.

He was told that Libertyville Lumber had no record of any invoices sent to either American or Emalfarb Investment and no record of any payments received from the developments or from Nick Favia. Emalfarb and an assistant then inspected all of the canceled American and Emalfarb Investment checks made out to Libertyville Lumber and discovered that each of the checks had been cashed at the Loyola "L" Currency Exchange. Further investigation revealed the broad scope of Favia's misconduct. Favia had submitted sixteen phony check requests to Emalfarb Investment, totaling $27,363.76, and fifty-four fictitious check requests to American, totaling $156,807.36. Those checks, made out to a number of fictitious payees, all had been cashed at the Loyola "L" Currency Exchange.

Emalfarb confronted Favia with this information. As a part of the present litigation, Mark Emalfarb executed a declaration describing events following this confrontation. The declaration sets forth the following scenario. When confronted, Favia confessed that he had been sending Emalfarb fictitious check requests and then cashing the checks himself. Favia stated that, in 1991, he had discussed his need to cash checks made out to third-party payees with a friend and neighbor, Joe Lewis. Favia told Emalfarb that Lewis introduced him to Alan Fishman, the owner of the Loyola "L" Currency Exchange, and told him that Fishman would cash checks to third-party payees as long as there was money behind them.

According to Emalfarb's declaration, Favia stated that he then went to the Loyola "L" Exchange where he met Fishman and gave him the first third-party check. Favia said that Fishman approved the check and gave it to a Loyola "L" cashier who cashed the check, deducting Loyola "L" 's standard 1–1.5% processing fee. Favia told Emalfarb that he continued to cash American and Emalfarb Investment checks made payable to third-party payees at the Loyola "L" Exchange for the next several years. According to Favia, if a new cashier was working and questioned Favia about the checks, he would tell her to call Fishman or Fishman's son, Ira, for authorization. Favia stated that the Loyola "L" cashiers would always cash the checks for him.

Favia's employment with American was terminated on February 21, 1995. Favia has conceded that he owed $459,309.03 to American and Emalfarb Investment as restitution for his fraudulent check scheme. This amount included the $184,-171.12 actually embezzled as well as amounts for the repayment of wages, interest, attorney's fees, and other losses. On February 23, 1995, Favia and his wife entered into an initial settlement agreement with American. Pursuant to this agreement, the Favias deeded their home to American as partial repayment for the amount owed. However, the Favias were allowed to retain use and occupancy of the property until August 31, 1995 in exchange for monthly rent payments to American. In the February agreement, the Favias waived any claims they may have had against Appellants; however, the agreement specifically noted that American did not intend to grant Favia a release of any kind under this agreement.

On March 1, 1995, Robert Levin, an attorney for Emalfarb, American, and Emalfarb Investment, had a telephone conversation with Favia regarding the phony checks. Levin executed a declaration outlining this conversation. This declaration restates much of the Emalfarb declaration. One notable difference between the declarations is that Levin asserts that Favia told him that he could only recall being questioned by a cashier one time, when he presented a check made payable to "Ed Gottlieb." Favia stated that when the cashier challenged him, he told her to call Fishman. According to Favia, the cashier made a phone call and then cashed the check.

On August 24, 1995, Favia and his wife entered into a second settlement agree-

ment with American, Emalfarb Investment, and Mark Emalfarb. Under this agreement, the Favias turned over possession of their home to American, tendered a payment of $45,000, agreed to cooperate with American and Emalfarb Investment in civil litigation resulting from the check-cashing scheme, and obtained Appellants' agreement that they would not seek to recover any additional amounts from the Favias, subject to their performance under the agreement. Including the value of his home, Favia made a total repayment of $196,528.04 to American and Emalfarb Investment. Appellants contend that this amount covered repayment of wages, interest, attorney's fees, and other losses, but not the $184,171.12 actually embezzled.

On September 8, 1995, Appellants filed their initial complaint in the present lawsuit. The complaint named Fishman as a defendant and included other named and unnamed defendants, including Favia. By the time Appellants filed their First Amended Complaint in March 1996, they had dropped all of the defendants except Fishman.

At his deposition in the present case, on October 15, 1996, Favia, who was represented by counsel, exercised his Fifth Amendment right against self-incrimination. Favia indicated that he would continue to assert his Fifth Amendment right if called to testify at a later deposition or at trial. During discovery, Joe Lewis signed an affidavit in which he denied having any knowledge of or involvement in establishing a check-cashing scheme. Fishman signed an affidavit denying any knowledge of or involvement in a check-cashing scheme with Favia and asserting that he never gave approval for the cashing of any checks presented by Favia after Favia's initial visit. At the close of discovery, Fishman moved for summary judgment based on the Lewis and Fishman affidavits and Favia's assertion of his Fifth Amendment right. In response to Fishman's summary judgment motion, American and Emalfarb Investment produced

the declarations by Mark Emalfarb and Robert Levin, setting forth the alleged statements made by Favia to Emalfarb and Levin in February and March 1995 which outlined Fishman's involvement in the check-cashing scheme. Fishman moved to strike the declarations as hearsay. American and Emalfarb Investment argued that the declarations were admissible under Federal Rule of Evidence 804(b)(3).

On October 29, 1997, Magistrate Judge Levin granted Fishman's motions to strike the Emalfarb and Levin declarations. Magistrate Judge Levin then ordered American and Emalfarb Investment to submit an amended response to Fishman's motion for summary judgment. After receiving the amended response and Fishman's reply, Magistrate Judge Levin granted summary judgment to Fishman. This appeal followed.

## II. ANALYSIS

Appellants first argue that the magistrate judge erred in excluding the Emalfarb and Levin declarations as hearsay. Secondly, Appellants contend that, even without the declarations, they have presented sufficient evidence to withstand Fishman's motion for summary judgment. We address each issue in turn.

### A. The Declarations

■ The portions of the Emalfarb and Levin declarations dealing with alleged statements by Favia are clearly hearsay, out-of-court statements offered to prove the truth of the matter asserted. As a general rule, hearsay statements are not admissible. Fed.R.Evid. 802. However, the Federal Rules of Evidence provide exceptions to the hearsay exclusion for certain types of hearsay statements which bear specific indicia of reliability. Rule 804 provides exceptions to the general rule for certain cases in which the declarant is unavailable as a witness. Appellants argue that the Emalfarb and Levin declarations are admissible as statements against

penal interest by an unavailable declarant under Rule 804(b)(3) and that the magistrate judge erred in excluding them. We review the magistrate judge's construction of the evidentiary rules *de novo* and his application of the rules for abuse of discretion.[1]

■■■ An out-of-court statement by an unavailable declarant will not be barred by the hearsay rule if the statement was

> at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid. 804(b)(3). The proponent of the out-of-court statement bears the burden of showing that the statement qualifies under Rule 804(b)(3). *United States v. Nagib*, 56 F.3d 798, 804 (7th Cir.1995) (citing *United States v. Groce*, 999 F.2d 1189, 1190 (7th Cir.1993)). In *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990), we adopted a three-part test to determine the admissibility of statements under Rule 804(b)(3) set forth by the Fifth Circuit in *United States v. Alvarez*, 584 F.2d 694 (5th Cir.1978). *Garcia*, 897 F.2d at 1420. Under *Garcia*, a statement will be admissible under Rule 804(b)(3) if: (1) the declarant is unavailable; (2) the statement was against the declarant's penal interest; and (3) corroborating circumstances exist indicating the trustworthiness of the statement. *Id.* This test applies to statements offered to exculpate or to inculpate a third party. *Id.*

The magistrate judge found that American and Emalfarb Investment had not met their burden under *Garcia* of showing corroborating circumstances indicating the trustworthiness of Favia's statements as set forth in the declarations. The magistrate judge noted that a reasonable inference, based on the timing and content of the settlement agreements, was that Favia's statements were made to curry favor with Appellants. On appeal, American and Emalfarb Investment contend that the corroborating circumstances requirement outlined in *Garcia* should not apply to inculpatory statements in civil cases. This is a two-part argument. First, Appellants argue that the Rule 804(b)(3) corroboration requirement applies only to exculpatory and not inculpatory statements following the Supreme Court's decision in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Secondly, they contend that the corroborating circumstances requirement was designed to satisfy the confrontation clause and, therefore, it is not necessary in civil cases.

■■■ Rule 804(b)(3) expressly requires corroborating circumstances only for statements exculpating the accused. The Supreme Court examined the scope of Rule 804(b)(3) in *Williamson*; however, the Court expressly declined to address whether Rule 804(b)(3) requires that statements offered to inculpate a third party also be supported by corroborating circumstances. *Williamson*, 512 U.S. at 605, 114 S.Ct. 2431. This case presents the first opportunity for this court to examine the continued validity of *Garcia* following *Williamson*. In *Williamson*, the Court held that, under Rule 804(b)(3), statements that do not serve to inculpate the declarant are inadmissible, "even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at 600–01, 114

---

1. Appellants urge us to apply a *de novo* standard of review to the district court's admissibility decision. However, "the standard of review with respect to evidentiary rulings is abuse of discretion, even when we are reviewing the grant of summary judgement." *Bradley v. Work*, 154 F.3d 704, 708–09 (7th Cir. 1998) (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742, 744 (7th Cir.1997)).

S.Ct. 2431. Appellants contend that one of the primary reasons for expanding the corroborating circumstances requirement to inculpatory statements was to safeguard the coconspirator's exception set out in Rule 801(b)(2)(E) and that the ruling in *Williamson* eliminates this concern. However, in *Williamson*, the Court expressly noted that in order for statements to be admissible under Rule 804(b)(3) they must be "truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Williamson*, 512 U.S. at 603, 114 S.Ct. 2431. The Court stated that "[t]he question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Id.* at 603–04, 114 S.Ct. 2431. Rather than doing away with the corroborating circumstances requirement, this language reiterates that the Rule 804(b)(3) inquiry must be fact-intensive. We believe it best to continue to utilize a unitary standard for applying Rule 804(b)(3) to statements offered both to exculpate and to inculpate a third party. Nothing in *Williamson* alters this conclusion.

 Appellants further argue that the purpose for the corroborating circumstances requirement adopted in *Garcia* was to square Rule 804(b)(3) with the Sixth Amendment confrontation clause. Since the confrontation clause does not apply in the present case, a civil suit for damages, Appellants urge us to dispense with the corroboration requirement. Appellants fail to note, however, that, in *Garcia*, we adopted the three-prong *Alvarez* test under our Rule 804(b)(3) analysis. *Garcia*, 897 F.2d at 1420–21. In a separate analysis, we recognized that the Sixth Amendment requires a two-part test to determine whether evidence admitted pursuant to a hearsay exception violates a criminal defendant's confrontation rights.

*Id.* at 1421. Before a hearsay statement can be deemed admissible, the confrontation clause requires (1) a clear showing that the declarant actually made the statement in question and (2) circumstantial evidence supporting the truth of the statement. *Id.* While the same evidence may fulfill both the circumstantial evidence prong of the confrontation clause test and the corroborating circumstances prong of the Rule 804(b)(3) analysis, the tests represent two distinct analyses. The Rule 804(b)(3) corroborating circumstances requirement is applicable to civil cases.

 Having determined that the corroborating circumstances requirement applies to the Emalfarb and Levin declarations, we must now ascertain whether Appellants are able to meet their burden of showing corroborating circumstances under the facts of this case. There are several factors to consider in determining whether corroborating circumstances exist for Rule 804(b)(3) purposes. These include the relationship between the declarant and the accused; whether the statement was voluntary and made after the declarant was advised of his *Miranda* rights; and whether there was any evidence that the statement was made to curry favor with authorities. *Nagib*, 56 F.3d at 805 (citation omitted). The magistrate judge determined that given the timing and content of the settlement agreements between Favia and Appellants, it was reasonable to infer that Favia's statements to Emalfarb and Levin were made in order to "curry favor" with Appellants and excluded the declarations. We review this decision for abuse of discretion. *Bradley*, 154 F.3d at 708–09.

There is nothing in the record to indicate that Favia's statements were not voluntary, and the context in which the statements were made did not trigger a *Miranda* warning. Furthermore, there is no evidence of animosity between Favia and Fishman. However, it is undisputed that Favia made the statements only after he had been confronted with Emalfarb's

discovery of his misconduct. Favia made the statements to adversaries, to whom he was liable for over $450,000, which supports the inference that Favia may have been attempting to secure a lesser punishment for himself through cooperation. Additionally, after Favia's statements, the parties entered into an agreement under which Appellants agreed to accept payment of only $196,528.04 in satisfaction of Favia's acknowledged $459,309.03 debt in exchange for Favia's cooperation in the civil litigation in the matter. Given this set of facts, the magistrate judge did not abuse his discretion in finding that Favia's statements were made in an attempt to curry favor with his interrogators. The declarations were properly excluded.

B. Summary Judgment

▬ On January 6, 1998, Magistrate Judge Levin granted summary judgment to Fishman. We review this grant of summary judgment *de novo. Kolman v. Sheahan,* 31 F.3d 429, 430 (7th Cir.1994). We will affirm if the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

▬ Appellants' complaint alleged that Fishman violated RICO § 1962(c) which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Any person injured in his business or property by reason of a violation of § 1962" may bring a civil action under RICO to recover "threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). In order to state a claim under § 1962(c), a

plaintiff must show by a preponderance of the evidence: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 727 (7th Cir.1998).

▬ In the present case, the parties agree that the Loyola "L" satisfies the definition of a RICO enterprise. Under RICO, "racketeering activity," also referred to as "predicate acts," is defined "as acts indictable under any one of several federal or state offenses, including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343." *McDonald v. Schencker,* 18 F.3d 491, 494 (7th Cir.1994). A pattern of racketeering activity consists of at least two predicate acts within a ten-year period. *Id.* Appellants premise their claim on mail and wire fraud. To state a claim for mail fraud under 18 U.S.C. § 1341 or for wire fraud under 18 U.S.C. § 1343, Appellants must show (1) that Fishman engaged in a scheme to defraud, (2) with the intent to defraud, and (3) that he used the mails or interstate wires in furtherance of that scheme. *See United States v. Ross,* 77 F.3d 1525, 1542 (7th Cir.1996). Appellants need not show that Fishman himself utilized the mail or wire services, but only that he caused the mail or wire services to be used by acting with the knowledge that their use would "follow in the ordinary course of business, or where such use [could] reasonably be foreseen." *United States v. Alexander,* 135 F.3d 470, 474–75 (7th Cir.1998) (citations and quotations omitted).

▬ Appellants contend that the predicate acts in the present case are "in excess of fifty mail and/or wire frauds executed by Favia over a five year period." It is undisputed that all checks cashed at the Loyola "L" are transported to the bank via a private armored carrier service, and there is no evidence that Fishman person-

ally used the mail or interstate wire services in connection with the checks cashed by Favia. Additionally, there is no evidence that Fishman caused the mail or wire services to be used under the definition set forth in *Alexander.* Appellants contend that "Fishman or his office" personally authorized the cashing of Favia's checks on at least three occasions, with the knowledge that Mark Emalfarb, the person signing the checks, was in Florida. Taking Appellants' assertions as true, Fishman, on two occasions personally authorized the cashing of checks presented by Favia after Joe Lewis vouched for Favia. On one other occasion, Fishman's son, Ira, authorized the cashing of a check presented by Favia. There is no evidence that Fishman acted with intent to defraud Appellants. There is insufficient evidence to establish Fishman's direct liability under § 1962(c).

■ Alternatively, Appellants argue that Fishman was liable for violating § 1962(c) under an aider and abettor theory. This court has not yet determined whether aiding and abetting liability applies in civil RICO actions, although several other circuits have recognized it in such cases. *See In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 954 (7th Cir.1996). We need not resolve this matter in the present case because Appellants' claim fails even under an aider and abettor theory. To prevail under an aider and abettor theory, Appellants must show, among other things, that Fishman acted with the requisite scienter, that he knew of the commission of the mail and wire fraud and acted with the intent to facilitate it. *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 270 (3d Cir.1995). Both Fishman and Lewis have denied under oath any knowledge of Favia's fraudulent check-cashing scheme. The Loyola "L" cashiers testified that they cashed the checks presented by Favia without verifying them, against standard Loyola "L" procedures, because on one occasion Fishman told them that Favia was a "friend of a friend." The cashiers

testified that even though Favia's signature card instructed them to "verify all checks," they did not do so. Appellants question the credibility of the assertion that the cashiers ignored standard Loyola "L" procedures and cashed so many checks for such large amounts without verification from Fishman. However, the evidence in the record, including the deposition testimony of both cashiers, supports the assertion, and there is no evidence to the contrary. Appellants further argue that a showing of recklessness should be sufficient to fulfill the scienter requirement. Appellants cannot prevail even under this broad standard because, while the record evidence may support a finding that the Loyola "L" cashiers acted recklessly, there is no evidence that Fishman acted recklessly. In fact, Fishman had safeguarding procedures in place at the currency exchange which were disregarded by his employees. The magistrate judge properly granted summary judgment on Appellants' § 1962(c) claim.

■ Appellants also brought a claim against Fishman under 18 U.S.C. § 1962(d), which prohibits a conspiracy to violate any of RICO's substantive provisions. Appellants allege that Fishman conspired with Favia to violate § 1962(c). To establish liability under § 1962(d), Appellants must demonstrate, by a preponderance of the evidence, "an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren,* 156 F.3d at 732 (citations omitted). This requires a two-part showing: first, that Fishman agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity; and, secondly, that he agreed that someone would commit at least two predicate acts to accomplish those goals. *See id.* (citations omitted). " '[A] defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even

though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise.'" *Id.* (quoting *United States v. Neapolitan,* 791 F.2d 489, 499 (7th Cir.1986)).

■ The record contains no direct evidence that Fishman entered into an agreement to violate RICO; in fact, Fishman has made a sworn statement to the contrary. Appellants therefore rely on circumstantial evidence to support their claim. They contend that the record shows that Fishman on two occasions personally authorized the cashing of third-party checks presented by Favia and that from this evidence it can be inferred that Fishman agreed to the commission of at least two predicate acts. Even taking this assertion as true, there is no evidence to support an inference that Fishman was aware of the nature and the scope of Favia's scheme and agreed to participate in it. Fishman expressly denied any knowledge of the scheme and stated that he personally authorized Favia's initial check cashing only because Joe Lewis vouched for him. Appellants have failed to point to any evidence which would support the essential finding that Fishman agreed to participate in Favia's check-cashing scheme. The magistrate judge's grant of summary judgment on Appellants' § 1962(d) claim was proper.

### III. CONCLUSION

The decision of the district court is AFFIRMED.