In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2473

United States of America,

Plaintiff-Appellee,

v.

Wahid Shukri,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 14--David H. Coar, Judge.


Argued January 4, 2000--Decided March 15, 2000


   Before Cudahy, Kanne and Diane P. Wood, Circuit
Judges.

   Kanne, Circuit Judge.  Wahid Shukri was arrested
and convicted for his participation in a string
of cartage thefts. He now presents two issues on
appeal. First, he argues that the district court
wrongly denied his motion in limine to exclude
inculpatory hearsay evidence under Rule 804
(b)(3) of the Federal Rules of Evidence. Second,
he argues that his trial counsel was so
incompetent that he was denied the right to
effective assistance of counsel as guaranteed by
the Sixth Amendment. The district court properly
admitted the inculpatory hearsay statements
despite Shukri's motion in limine, and Shukri's
counsel was not constitutionally defective. We
affirm Shukri's conviction.
I.  History

   During the winter of 1997-98, the FBI tracked a
string of merchandise thefts around the Chicago
suburbs, including the theft of a trailer load of
Black and Decker appliances from a lot in Alsip,
Illinois, on January 5, 1998. Luckily for law
enforcement, the trailer was equipped with a
tracking device, and the FBI traced the device to
nearby Orland Park, Illinois. The tracking device
led the FBI to a neighborhood filled with storage
warehouses, so the FBI spent several days
canvassing the area in search of the trailer. The
FBI checked every warehouse except one guarded by

a particularly recalcitrant custodian who refused to permit them entry. Having found nothing inside the other warehouses in the vicinity, the FBI scouted the perimeter of the unsearched warehouse awaiting the arrival of the thieves, who the FBI predicted would return to reclaim their loot. Shortly thereafter, on January 7, 1998, Wahid Shukri and his associates Jihad Kartoum and Abed Burkan appeared on the scene.

When the FBI spotted them, Shukri and his friends were feverishly loading a rental truck with Black and Decker appliances stored in the warehouse. Upon further investigation, the FBI discovered that the threesome possessed 1,900 cartons of stolen merchandise, worth more than $100,000, comprising goods taken in four separate thefts during the previous two months. Plastic shrink wrapping and product labels were strewn all about the warehouse, and Shukri had $2,800 cash in his wallet. FBI agents arrested Shukri, Kartoum and Burkan for possession of stolen merchandise.

During interrogation, Shukri waived his Miranda rights and immediately pointed the finger at Kartoum and Burkan. He insisted that his complicity was limited to assisting them move the merchandise from the warehouse to their truck. Kartoum and Burkan, he claimed, arrived earlier that day at his store in Chicago and abruptly asked him for help moving some "stuff." Eager to assist, Shukri left his store and accompanied them to several storage facilities, including one at which Shukri proffered his driver's license to rent a space under his name. Shukri admitted that he had a "bad feeling" and knew that the "stuff" was stolen merchandise because Kartoum told him that the police were interested in inspecting the warehouse and they had to hide the goods immediately.

Shukri and Kartoum were released on bond on January 13, 1998, and Burkan was released on bond on April 9, 1998. During this pretrial release, Kartoum and Burkan wasted little time returning to cartage theft, now without Shukri's participation, and stole three new loads of merchandise. On May 7, 1998, the FBI arrested Kartoum and Burkan again, along with Naser Al-Qaisi, Kartoum's brother-in-law. Although Shukri was uninvolved, Al-Qaisi made several post-arrest statements to the FBI probative of Shukri's involvement in the thefts leading up to his January 7 arrest.

First, Al-Qaisi said that Kartoum confided to him that Kartoum and Burkan had been stealing goods and storing them in the Orland Park warehouse, and that Shukri had purchased stolen

merchandise from Kartoum, including paper products seized by the FBI on January 7, 1998. Kartoum admitted that he, Burkan and Shukri were trying to remove the stolen goods from the Orland Park warehouse and avoid police discovery when the trio was arrested. Second, Al-Qaisi testified that he had listened to Kartoum and Burkan discuss whether they should reimburse Shukri for the stolen goods that Shukri had bought from them but were seized by the FBI on January 7.

On May 28, 1998, a federal grand jury indicted Shukri, Kartoum and Burkan on three counts of receipt of stolen property in violation of 18 U.S.C. sec. 371, and one count of conspiracy to receive and possess stolen property in violation of 18 U.S.C. sec. 659. On October 14, 1998, the grand jury returned a superseding indictment adding three counts of receipt of stolen property against Burkan and Kartoum relating to their arrest on May 7, 1998. Kartoum fled the country sometime in October 1998, and Burkan pleaded guilty to conspiracy on December 3, 1998.

Meanwhile, Shukri waived his right to a jury trial, pleaded not guilty to the charges against him and proceeded to trial on January 27, 1999. Since Kartoum had fled the country and was unavailable to testify at trial, the government moved in limine to admit Al-Qaisi's hearsay testimony regarding Kartoum's statements under Rule 804(b)(3) of the Federal Rules of Evidence. Shukri responded with his own motion in limine to bar admission of Al-Qaisi's testimony. Shukri's counsel admitted that Kartoum's remarks to Al-Qaisi were statements against Kartoum's penal interest, but contended that the statements lacked "corroborating circumstances" and thus did not qualify for the hearsay exception under Rule 804(b)(3). The district court denied Shukri's motion in limine and admitted Al-Qaisi's testimony at trial.

During Shukri's bench trial, Shukri's counsel did not object when the government asked Shukri several times on cross-examination if Shukri had asked Kartoum why they had to move the merchandise posthaste on January 7. After Shukri testified that the $2,800 cash in his wallet at the time of his arrest was unrelated to the stolen merchandise, the government asked whether Shukri had $2,800 in his pocket at that moment. Shukri's counsel again did not object. On February 1, 1999, the district court convicted Shukri of conspiracy and three counts of possession of stolen property, and sentenced him to five months imprisonment and three years supervised release. Shukri now appeals.

II. Analysis

Shukri presents two claims on appeal: (1) the district court erred by denying his motion in limine to bar Al-Qaisi's testimony; (2) he was denied his right to effective assistance of counsel under the Sixth Amendment.

A.  Shukri's Motion in Limine and Rule 804(b)(3)

Shukri and the government agree that Kartoum's statements are hearsay statements admitted for the truth of the matter asserted, and hearsay statements are inadmissible as a general rule under Rule 802 of the Federal Rules of Evidence. See Fed. R. Evid. 802. However, Rule 804(b)(3) permits admission of a hearsay statement "which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3). For the Rule 804(b)(3) exception to apply, the proponent of an inculpatory hearsay statement must show that (1) the declarant is unavailable to testify at trial; (2) the statement was against the declarant's penal interest; and (3) corroborating circumstances bolster the statement's trustworthiness. See American Auto. Accessories, Inc. v. Fishman, 175 F.3d 534, 540 (7th Cir. 1999); United States v. Garcia, 897 F.2d 1413, 1420 (7th Cir. 1990). We review the district court's decision to admit hearsay testimony under Rule 804(b)(3) for abuse of discretion. See United States v. Amerson, 185 F.3d 676, 681 (7th Cir. 1999)./1

Shukri acknowledged that Kartoum fled the country before trial and was unavailable to testify himself. Furthermore, Shukri admitted in his motion in limine that Kartoum's statements were "most definitely against Kartoum's penal interest." Indeed they were, because Kartoum discussed his intimate knowledge of and involvement in the multiple thefts for which both he and Shukri were arrested. See United States v. York, 933 F.2d 1343, 1361 (7th Cir. 1991) (holding that statements demonstrating inside knowledge of the crime are against penal interest); see also United States v. Barone, 114 F.3d 1284, 1297 (1st Cir. 1997).

Although Shukri's counsel unequivocally waived the argument that Kartoum's statements were not against penal interest, Shukri insists that waiver does not apply to him on appeal because his trial lawyer acted without consulting him and he personally would not have agreed. Shukri cites for support a line of cases which hold that certain personal rights can be waived only with

the knowing and personal approval of the defendant himself. See, e.g., United States v. Elkins, 176 F.3d 1016, 1021 (7th Cir. 1999) (waiver of right to plead not guilty); United States v. Robinson, 8 F.3d 418, 421 (7th Cir. 1993) (waiver of jury trial); United States v. Taylor, 113 F.3d 1136, 1140 (10th Cir. 1997) (waiver of right to counsel). Shukri, however, provides no convincing reason that arguments under Rule 804(b)(3) are analogous to, and ought to be included among, the few fundamental rights for which a defendant himself must waive personally and knowingly. See United States v. Boyd, 86 F.3d 719, 724 (7th Cir. 1996) ("No one believes that the subtleties of the Federal Rules of Evidence--which often elude capable lawyers-- are meet for decision by the defendant.").

Thus, Shukri's sole remaining hope is that Kartoum's statements to Al-Qaisi were not supported by "corroborating circumstances." However, the evidence presented at Shukri's trial substantiates the truthfulness of Kartoum's statements to Al-Qaisi. Carrying $2,800 in cash, Shukri suddenly left his store in the middle of the day to help Kartoum and Burkan rent storage space and move merchandise from the Orland Park warehouse. Shukri assisted Kartoum and Burkan, even though he felt that the goods were stolen and knew that police were investigating. Furthermore, Kartoum and Al-Qaisi shared a confidential relationship within which candor is presumed; they are brothers-in-law and were confederates in a theft conspiracy at the time of Kartoum's statements. Statements between confidants are generally more reliable and trustworthy because such relationships bespeak candor and confidence. See United States v. Robbins, 197 F.3d 829, 840 (7th Cir. 1999) (finding trustworthy under Rule 804(b)(3) statements spoken to a fiancee); see also United States v. Matthews, 20 F.3d 538, 546 (2d Cir. 1994) (finding trustworthy statements made to declarant's girlfriend). Shukri was closely involved with Kartoum and Burkan in possessing and transporting stolen goods, and Kartoum's statements were consistent with Shukri's involvement.

Nevertheless, Shukri argues that Kartoum is related by marriage to Shukri and therefore would have been unlikely to make statements that inculpate his relative. In cases where the hearsay declarant simultaneously confessed to wrongdoing and exculpated another party, we have considered the relationship between the declarant and the exculpated party in deciding whether corroborating circumstances existed under Rule 804(b)(3). See American Auto., 175 F.3d at 541- 42; United States v. Nagib, 56 F.3d 798, 805 (7th

Cir. 1995); United States v. Garcia, 986 F.2d 1135, 1140 (7th Cir. 1993). Conversely, for inculpatory hearsay statements against the declarant's penal interest, we have considered whether the declarant was trying to deflect blame or curry favor with authorities by incriminating others. See Garcia, 897 F.2d at 1421. The concern in these cases was that the declarant might have lied for ulterior purposes--to exculpate an associate or win lenient treatment from law enforcement. But here, Kartoum had no reason to think that his comments would affect Shukri at all. Kartoum was speaking in private to his confederate and brother-in-law, not to law enforcement or an adversary, and there was minimal chance that he would have considered the possibility that his comments would inculpate Shukri before remarking to Al-Qaisi. See Robbins, 197 F.3d at 838 (finding reliable under Rule 804(b)(3) statements made privately to declarant's fiancee); United States v. Curry, 977 F.2d 1042, 1056 (7th Cir. 1992) (deeming reliable statements made privately to an acquaintance); see also Matthews, 20 F.3d at 546.

  Shukri also claims that Kartoum's hearsay statements were particularly unreliable because Al-Qaisi was testifying pursuant to plea agreement and trying to curry favor with law enforcement. Shukri here misapprehends the hearsay exception's rationale. Hearsay testimony is presumptively unreliable under the common law because the opposing party has no opportunity to cross-examine and test the declarant's truthfulness under oath before the factfinder. See 5 John H. Wigmore, Evidence in Trials at Common Law sec. 1368, at 37, sec. 1420, at 251 (rev. ed. 1974) ("The theory of the hearsay rule . . . is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, by the test of cross-examination."); McCormick on Evidence sec. 245, at 728 (Edward W. Cleary ed., 3d ed. 1984). The Federal Rules of Evidence, however, permit hearsay testimony when the declarant's statement bears indicia of reliability such that the opposing party's inability to cross-examine the declarant is less troubling. For example, Rule 804(b)(3) embodies a judgment that statements against the declarant's interest are reliable because people do not inculpate themselves unless they are telling the truth. See Fed. R. Evid. 804(b)(3) Advisory Comm. Note; see also Chambers v. Mississippi, 410 U.S. 284, 299 (1973); York, 933 F.2d at 1360. We need not assess the truthfulness of the hearsay witness, Al-Qaisi, because Shukri had ample opportunity to cross-examine Al-Qaisi at trial. On cross-examination, the opposing party can challenge the hearsay

witness's truthfulness under oath and test whether he is telling the truth that the declarant made the alleged statement. In fact, on cross-examination, Shukri's lawyer did exactly that, attacking Al-Qaisi's truthfulness and questioning whether Kartoum actually made those statements to Al-Qaisi. The key for Rule 804(b)(3), and indeed any hearsay exception, is the reliability of the declarant's original statement, not the reliability of the hearsay witness. The district court properly admitted Al-Qaisi's testimony under Rule 804(b)(3).

B.   Ineffective Assistance of Counsel

   Shukri also contends that he was deprived of effective assistance of counsel at trial in violation of the Sixth Amendment. Whether counsel has rendered constitutionally ineffective assistance is a mixed question of law and fact, and we review de novo. See Stoia v. United States, 109 F.3d 392, 395 (7th Cir. 1997). As a preliminary matter, we address Shukri's claim of ineffective counsel on direct appeal, even though he did not raise that claim before the district court, because both parties so request and Shukri's claim can be conclusively decided from the trial record. See United States v. Brooks, 125 F.3d 484, 496 (7th Cir. 1997); United States v. Fish, 34 F.3d 488, 491 n.1 (7th Cir. 1994). Shukri cites only errors made at trial or otherwise recorded in the appellate record, which require no further evidentiary development.

   To prevail under Strickland v. Washington, 466 U.S. 668, 687 (1984), Shukri must show that (1) his trial counsel's performance fell below objective standards for reasonably effective representation; and (2) the deficient performance prejudiced his defense. See also United States v. Draves, 103 F.3d 1328, 1335 (7th Cir. 1997). The Strickland test is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997). We apply a strong presumption that "decisions by counsel fall within a wide range of reasonable trial strategies." United States v. Lindsay, 157 F.3d 532, 535 (7th Cir. 1998).

   First, Shukri claims that his counsel failed to research adequately the law governing the admissibility of statements against penal interest. Shukri argues that his counsel neglected to cite United States v. Garcia, 897 F.2d 1413 (7th Cir. 1990), in his motion in limine and therefore relied on outdated law. This omission, however, was unremarkable because Shukri's attorney instead cited United States v.

Harty, 930 F.2d 1257 (7th Cir. 1991), which sets forth the Garcia test for Rule 804(b)(3). Shukri also complains that his lawyer failed to argue that the district court must exclude those of Kartoum's statements that were not against penal interest under Williamson v. United States, 512 U.S. 594 (1994). This failure was inconsequential because Shukri's lawyer conceded that all Kartoum's statements were "most definitely against Kartoum's penal interest" under Rule 804(b)(3). The strategic decision by Shukri's counsel to waive this argument was a reasonable tactic as well. Kartoum's statements were against Kartoum's penal interest, just as Shukri's lawyer conceded, and Shukri's lawyer chose instead to focus his motion in limine on the stronger argument that there were not corroborating circumstances to support Kartoum's statements. Although these maneuvers by Shukri's lawyer were ultimately unsuccessful, they were reasonable choices given the circumstances.

Second, Shukri contends that he received ineffective assistance of counsel because his lawyer did not object to several questions that the government asked him during cross-examination. Shukri protests that his counsel's failures to object left Shukri like a "babe-in-the-middle-of-the-woods" at trial. The government asked Shukri several times, without objection, whether Shukri had asked Kartoum why they needed to move the merchandise immediately. When Shukri testified that the $2,800 in his wallet at the time of the arrest was unrelated to the stolen merchandise, the government without objection asked Shukri how much money Shukri had in his wallet at that moment. Shukri claims that these failures to object generated confusion and left the court with a distorted view of the facts.

The failures to object were well within the ambit of reasonable trial strategy and do not constitute ineffective performance of counsel. Shukri's lawyer reasonably chose not to object because the questions about which Shukri complains were harmless and had little impact on the outcome of the trial. A trial lawyer need not object to every irrelevant or redundant question just because he can, and Shukri has not shown that his trial counsel's failures to object were the result of incompetence rather than strategic restraint. Furthermore, Shukri cannot establish prejudice stemming from the failures to object. In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary. See Ashford v. Gilmore, 167 F.3d 1130, 1136 (7th Cir. 1999); United States v. Illinois, 546 F.2d 1298, 1304 (7th Cir. 1976). The district court, serving as factfinder in this bench trial,

did not appear confused by the government's questioning, and Shukri does not cite any evidence of confusion. The questions about which Shukri complains may have been redundant or irrelevant, but the absence of objection was not unreasonable or prejudicial, and Shukri's claim of ineffective counsel therefore fails.


III.  Conclusion

   For the foregoing reasons, we AFFIRM Shukri's conviction and the district court's denial of Shukri's motion in limine.


/1 The government's brief also discusses the requirements of the Confrontation Clause for admission of hearsay testimony, but we address only Rule 804(b)(3) here because Shukri did not argue in his motion in limine or his appellant's brief that the Confrontation Clause bars Al-Qaisi's testimony. See American Auto., 175 F.3d at 541 (distinguishing challenges under Rule 804(b)(3) from challenges under the Confrontation Clause).