In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3964

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RALPH A. SCANGA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-CR-74-C-01--Barbara B. Crabb, Judge.

Argued June 13, 2000--Decided August 21, 2000

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.  Ralph Scanga pleaded guilty to attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. sec.sec. 846 and 841(a)(1). In this direct criminal appeal challenging his sentence, Scanga contends that the amount of cocaine he personally used was miscalculated and thus the total quantity for which he was held responsible for distributing is incorrect. Alternatively, Scanga argues that his attorney's failure to object to the alleged miscalculation of the personal use amount constituted ineffective assistance of counsel in violation of the Sixth Amendment. We affirm.

In February 1999, Scanga met John Pickett and began receiving packages of cocaine sent by John Pickett's brother Lee, who lived in California. FBI agents received a tip in July 1999 that a Federal Express package containing cocaine would be sent to Scanga on the 14th of that month. The agents procured a warrant and intercepted the package, finding approximately .586 kilograms of cocaine. After removing the cocaine and reassembling the package, the agents sent the package to Scanga, who was arrested after picking it up.

Scanga pleaded guilty to the charge of attempting to possess cocaine with intent to

distribute and a presentence report (PSR) was prepared. According to Scanga's version of the offense, which was attached to the PSR, he received six shipments of cocaine from Lee Pickett totaling just under three kilograms, although the author of the PSR recorded the number incorrectly as 2.39 kilograms. But in his version of the offense, Scanga made two statements regarding the percentage of this total amount of cocaine that he personally used. First, he states that his friend Dick Busse, whom Scanga owed almost $10,000, moved in with him for five weeks and that he and Busse "would smoke an ounce to two ounces of cocaine per week during that period of time." He then recounts, "I had close to three kilos of cocaine sent to me of which I sold approximately half. The rest I either used or paid off debts with in order to continue getting high myself." According to an interview with John Pickett, however, Scanga received six to eight packages from Lee Pickett in California, and each package weighed approximately 20 ounces. The author of the PSR noted that John Pickett's statements would place the amount of drugs attributable to Mr. Scanga at 3.4 to 4.5 kilograms. John Pickett did not say how much of the cocaine Scanga used, nor did any other person, besides Scanga, provide information about personal use.

The probation office initially recommended that Scanga be held responsible for more than 3.5 but less than 5 kilograms of cocaine. Although the author of the PSR cited several sources of information about the drug quantity but did not specifically tie the calculation to any of them, the author opined that Scanga's own account put him above 3.5 kilograms. This amount is based on the 2.39 kilograms that the PSR author had mistakenly thought Scanga reported in his statement, plus .65 kilograms for two deliveries that the PSR author believed Scanga had not mentioned, minus the .2835 kilograms that Scanga said he and Busse used during the five-week period. As Scanga now recognizes, however, the math is wrong, because 2.39 kilograms plus .65 kilograms yields just 2.965. In Scanga's objection to the PSR, he overlooked this math error. Instead, Scanga contended that the amount of drugs attributable to him should be reduced to between 2.0 and 3.5 kilograms of cocaine because, he alleged, (1) the PSR author twice-counted the amount of one delivery, (2) included a delivery for which Scanga had no involvement, and (3) failed to give "credit" for the amount of cocaine Scanga personally used. The probation office then revised its calculation and, in an addendum to the PSR, recommended that the least amount Scanga received was 3.4 kilograms. Again, however, the probation office recommended that Scanga

personally used only .2835 kilograms of this total, which resulted in a final recommendation of 3.1 kilograms, a figure within the range of 2.0 and 3.5 kilograms advocated by Scanga in his objection to the PSR.

Scanga did not object to the PSR addendum either before or at the sentencing hearing. With respect to the guideline range, Scanga's counsel requested that the district court sentence Scanga in the low end of the range because, "with respect to relevant conduct, he was using a large percentage of [the cocaine]." Furthermore, defense counsel stated that the amount of cocaine Scanga used was "still accountable for relevant conduct, but in terms of being distributed . . . Mr. Scanga was addicted and was using a considerable amount." The district court ultimately adopted the guideline calculation of relevant conduct found in the PSR (more than 2.0 kilograms but less than 3.5 kilograms of cocaine). The court, after inclusion of a two-level upward adjustment for obstruction of justice and a three-level reduction for acceptance of responsibility, found Scanga's total offense level to be 27 with a criminal history level of two. This placed Scanga in a guideline range of 78 to 97 months. The court concluded that a sentence near the top of the guideline range was appropriate, and so sentenced Scanga to a 92-month term of imprisonment, five years of supervised release, and a $100 special assessment. Moreover, Scanga was to forfeit 65% of the sale proceeds of his home, with the remaining 35% of the amount from the sale to go towards child support for his son.

In this appeal of his sentence, Scanga first contends that the district court committed plain error by not taking into account what Scanga characterizes as his statement that he consumed approximately half of the cocaine that was shipped to him. According to Scanga, the court instead decreased the drug quantity by the amount he and Busse used during a five-week period. He argues that if the court had decreased the drug quantity by the entire "personal use" amount, the total quantity would have been more than .5 kilograms but less than 2.0 kilograms, resulting in a guideline range of 63 to 78 months. We believe, however, that Scanga has waived appellate review of the calculation of his relevant conduct. Waiver, as opposed to forfeiture, "occurs when a defendant intentionally relinquishes a known right." United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000) (citations omitted); see also United States v. Olano, 507 U.S. 725, 733 (1993). Scanga intentionally relinquished his right to appeal the guidelines calculations when both he and his

counsel affirmatively stated that they had no further objections after the drug quantity had been revised in the PSR addendum. Indeed, at the sentencing hearing the court asked whether Scanga or his counsel had any objections to the PSR. Scanga replied that "everything seems to be correct," and Scanga's attorney stated "I don't have any objection now that the addendum was filed." More importantly, Scanga did object to the amount of drugs credited towards personal use, but when the personal use quantity was not changed after the PSR addendum was filed, he failed to object further. Moreover, the objection to the PSR specifically claims that the drug quantity should be between 2.0 and 3.5 kilograms, even if adequate credit for personal use is included. The PSR was subsequently amended to this requested range, and Scanga did not object again. Admittedly, Scanga's counsel's statement at the sentencing hearing that personal use amounts were "accountable for relevant conduct" does seem to indicate ignorance of the fact that personal use should not be counted. Nonetheless, in both the PSR and the addendum, the same personal use amount was explicitly subtracted from the relevant conduct recommendations. Although Scanga did object to the personal use amount found in the PSR, he did not object to the identical calculation in the PSR addendum.

Alternatively, Scanga argues that his counsel at sentencing was ineffective because his attorney allegedly believed personal use counted toward relevant conduct, and therefore failed to object to the inclusion of personal use amounts. Under the familiar standard of Strickland v. Washington, 466 U.S. 668, 687 (1984), to demonstrate an ineffective assistance of counsel claim Scanga must first show that his counsel's actions (or inactions) were deficient. See also Allen v. United States, 175 F.3d 560, 563 (7th Cir. 1999). He must then demonstrate that the deficient performance caused prejudice. Id. In applying the Strickland standard, this court is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." United States v. Shukri, 207 F.3d 412, 418 (7th Cir. 2000) (citation and internal quotations omitted). Furthermore, there is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. Id. Contrary to Scanga's contention otherwise, his counsel did object to the amount of cocaine that the PSR author credited to personal use. That his attorney did not object again after the PSR was amended does not refute the presumption that his counsel's judgment was reasonable. In his objection, counsel specifically asked for a recommendation of 2.0 to 3.5 kilograms of cocaine. Once the PSR was reduced to this exact range, it was reasonable

for counsel to not object again.

Granted, counsel did state that the cocaine Scanga personally used was "still accountable for relevant conduct." But counsel's objection to the PSR, which stated that Scanga should be given credit for the cocaine he used, and the fact that both the PSR and the PSR addendum explicitly subtract the amount attributed to personal use, show that counsel knew he could object again to the personal use amount but just chose not to. Moreover, a collateral attack pursuant to 28 U.S.C. sec. 2255 is the more appropriate avenue for an inquiry into whether Scanga's counsel knew or didn't know that he could object again to the amount of drugs attributed to personal use. See, e.g., United States v. Yack, 139 F.3d 1172, 1176 (7th Cir. 1998) (recommending that ineffective assistance of counsel claims be raised in collateral proceedings because "the district court can then hold a hearing, if necessary, to learn what motivated attorneys to make the choices which were made"). In this direct appeal, however, "alleged lapses or errors will be presumed tactical moves, flawed only in hindsight." Id. (citations and internal quotations omitted). Because there is no evidence in the record concerning why Scanga's attorney at sentencing said that personal use was accountable for relevant conduct, there is no reason to disrupt the presumption that Scanga's attorney utilized his professional judgment when choosing not to object to the PSR a second time.

In conclusion, because Scanga has waived appellate review of the sentencing calculations, and because he has not shown that his counsel's performance was inadequate, we AFFIRM the district court's determination of Scanga's sentence.